## PEABODY *v.* UNITED STATES.

APPEAL FROM THE COURT OF PRIVATE LAND CLAIMS.

No. 50. Argued October 17, 1899. — Decided January 8, 1900.

This court holds in this case that there is no proof of any grant to the petitioner or those under whom he claims, and affirms the judgment of the court below in favor of the United States.

The claim of adverse possession (by those under whom the petitioner claims) down to the time of the occupation by the United States, is not sustained by the proof.

THE statement of facts will be found in the opinion of the court.

*Mr. F. W. Clancy* for appellant.

*Mr. Matthew G. Reynolds* for appellee. *Mr. Solicitor General* was on his brief.

MR. JUSTICE PECKHAM delivered the opinion of the court.

This is an appeal from a judgment of the Court of Private Land Claims dismissing the petition of the appellant and rejecting his claim to some 114,000 acres of land in the Territory of New Mexico, on the ground that it had not been sustained by satisfactory proof.

The petitioner in the court below in his petition for confirmation of the grant stated that on the 23d of February, 1824, José Rafael Samora, a citizen and resident of Ojo Caliente, on behalf of himself and twenty-five other persons, citizens of the Republic of Mexico, and residents of said district in the Territory of New Mexico, presented his petition for a grant to them of the tract therein described and called the Vallecito de Lovato, and the appellant's petition alleged that the governor granted the prayer, made the grant of land therein asked for, and directed the alcalde to place the grantees in possession, and that on September 22, 1824, the alcalde did place the grantees in juridical possession of the land, and executed his certificate thereof, which was presented to and

approved by the governor and delivered to the grantee, José Rafael Samora, for himself and his associates.

Various other facts were set up in the petition to show title in the petitioner, which it is not necessary to state.

The answer of the Government put the facts in issue, and the case duly came on for trial.

The following papers were put in evidence on the trial by the appellant:

(1.) " Translation of Muniments.

" Hon. constitutional alcalde of Abiquiu, Francisco Trujillo:

" I, José Rafael Samora, citizen and resident in the district of Ojo Caliente, together with twenty-five individuals of the same district, appear before you with the greatest respect and humility and in due form of law, and state, sir, that there being sufficient land in the Vallecito of Lovato to give us in possession we now ask that in the goodness of your heart you grant us the same, for we have not any place wherein to plant grain for harvesting, whereby we think the others, the residents of said district, will receive no injury.

" Wherefore we humbly request your honor, as our protector and as a lover of our country, to grant us said possession, whereby we will receive favor and benefit.

" Abiquiu, February 23, 1824. For all those stated.

JOSE RAFAEL SAMORA."

" I do hereby certify that the above is true and the land applied for, public, and I do not recognize those applying for the same as property holders.

FRANCISCO TRUJILLO."

(2.) (Unsigned Order.)

" The land applied for by José Rafael Samora, together with the twenty-five accompanying individuals in his petition, in virtue of your report, you may proceed to place them in possession, in order that they may not lose time in their labor until the necessary formalities can be had, which cannot be verified at this time, the excellent deputation not being in session to whom the matter pertains.

" I charge you to treat those unfortunate persons with consideration on placing them in possession, charging for your labor according to their wants and not more than the fee bill allows.

" God and (liberty). February 27, 1824.

(No Signature.)

" To the alcalde of Abiquiu."

(3.) The act of possession. This paper is signed by Francisco Trujillo, constitutional alcalde of the proper district, and after declaring that by virtue of the decree of Bartolome Baca, actual political chief of the province, given at Santa Fé on the 27th of February, 1824, on the petition presented by José Rafael Samora and his associates, requesting that there be adjudged to them a tract of public land, the alcalde states: " And having examined the said land and seeing its extent and proportions, the parties interested being present and others who joined them according to the list they presented, and all having agreed among themselves that at no time there should be interruptions or differences among them ; " he thereupon measured off to each one a certain quantity of land and placed them in possession.

The alcalde also states that he charged them to endeavor to fortify themselves for their own defence, etc. ; and as to the lands of which he then delivered possession, he gave them " to understand that as new colonists they shall exert themselves, not being authorized to exchange, sell or alienate the same until they shall have acquired title or have sufficient time to do so." This paper is dated the 22d of September, 1824. It is signed by Francisco Trujillo, but it does not appear when the possession was delivered, the certificate being dated at Abiquiu, which is many miles from the Vallecito, the location of the grant.

There was also put in evidence the act of possession in what is called the Petaca grant, dated March 25, 1836, in which it is stated that it is bounded on the west " by the boundary of the Vallecito grant," which it is claimed by the appellant is an admission of the existence of the grant in question.

Evidence in regard to possession was also introduced.

Upon the question whether the papers thus proved showed any grant of lands, the counsel for the Government contended that they did not purport to grant any land or pass any interest therein, but gave only a permissive possession preliminary to a grant which was never obtained.

Without discussing the various other objections which were raised against the confirmation of this alleged grant to the petitioner, we are of opinion that the above objection was well taken, and that there was no sufficient evidence of any grant whatever.

The petition signed by Samora, in behalf of himself and twenty-five other individuals of the same district, asks that the alcalde may give them possession of the land, as they have no other place wherein to plant grain for harvesting, and they think that the others, the residents of the district, will receive no injury, and therefore they request that the alcalde, as their protector and as a lover of their country, may grant them such possession, etc. At the very commencement, therefore, we find that the petition was not one for the granting of title, but simply one for the granting of possession to land, in order that they might plant their grain for harvesting. Trujillo certifies that the statement in the petition is true and the land applied for is public, and that he does not recognize those applying for the same as property holders.

Then comes the unsigned order directing the alcalde of Abiquiu to " proceed to place them (Samora, with the twenty-five accompanying individuals named in the petition) in possession, in order that they may not lose time in their labor until the necessary formalities can be had, which cannot be verified at this time, the excellent deputation not being in session to whom the matter pertains." Then the certificate of Trujillo, which is termed by the appellant " the certificate of the delivery of juridical possession of the lands to the petitioner," shows on its face that it was not the ordinary delivery of juridical possession under a grant of title to land, but that it was a mere placing of the petitioner in possession under a license of the authorities accompanied by a distinct statement that the peti-

tioner and his associates were not "authorized to exchange, sell or alienate the lands until they shall have acquired title or have sufficient time to do so."

These three papers, which form the basis of the appellant's claim of title, fail when examined to show any title whatever in him. There is in these papers no evidence of any grant of title to these lands to Samora or his associates. It may be that he and his associates hoped thereafter to obtain title, but it was certainly not granted by these papers. This unsigned order and the act of possession, when taken together, show that the possession that was delivered and taken was preliminary to the title which was afterwards to be acquired, and there is no proof that such title ever was thereafter obtained.

In *De Haro* v. *United States*, 5 Wall. 599, 627, the decree of the government was, in that case, held to be a naked license to occupy the land provisionally, and hence was not entitled to confirmation under the act of Congress of March 3, 1851. The distinction between the effect of a license to enter upon lands uncoupled with an interest therein, and a grant of some title, right or interest in lands, is stated by Mr. Justice Davis in that case, in which he said : " A grant passes some estate of greater or less degree, must be in writing, and is irrevocable unless it contains words of revocation ; whereas a license is a personal privilege, can be conferred by parol or in writing, conveys no estate or interest, and is revocable at the pleasure of the party making it."

It is urged that the fact of the possession by Samora and his associates, and their heirs, grantees, etc., down to the time of the American occupation of the country, is strong — if not conclusive — evidence of the making of a grant in accordance with the original claims of those petitioners, and that a grant should therefore be presumed.

The possession must be adverse, exclusive and uninterrupted, and inconsistent with the existence of title in another.

Its character in this case, however, appears from the papers not to have been adverse to the government, nor to have originated with a claim of title under a grant ; and from the time it was delivered up to the time of the American occupation,

whatever possession there was, was entirely consistent with that which was given by the above act, a merely permissive occupation, and therefore we cannot presume that it was subsequently changed to that of a possession under a grant, without any evidence of the existence of the grant other than that derived from the papers put in evidence, which show that such possession was permissive or by license only.

As is stated in *Serrano* v. *United States*, 5 Wall. 451, 461, " There is no adverse holding here, but the possession was a permissive one, and consistent with the proprietary interests of Spain and Mexico; and the fact that those governments did not terminate the possession, which was a mere tenancy at will, cannot create an equity entitled to confirmation. Serrano held under a license to occupy, and that license could be revoked at any time. The failure to revoke it cannot change the original character of the possession into an adverse one. If Serrano had entered into possession under a claim of right, and had title papers, though imperfect, he might say that the length of his possession entitled him to the favorable consideration of the court. Not so, however, where he had no interest in the land, never applied for any, either to Spain or Mexico, and was content with a permission to occupy it for the purposes of pasturage." This was the character of the possession of the grantors of the petitioner. Indeed, whilst under the civil law, including the Spanish law, one may prescribe beyond his title, he cannot do so contrary to the title. See *Zeringue* v. *Harang*, 17 La. 349 ; *Neel* v. *Hibard*, 30 La. Ann. 309.

One of the difficulties in the petitioner's case is that the act of possession absolutely negatives the giving of it under a grant passing any interest in the lands. That act stated that those who are placed in possession are not " authorized to exchange, sell or alienate the same until they shall have acquired title," etc. A grant, therefore, would not be presumed even upon proof of exclusive and uninterrupted possession, so long as it was entirely consistent with the evidence produced in the case, which shows that it originated in a mere license, and there is no proof from which it can be claimed that its character changed from that of a licensee to that of

one in possession adversely and under a claim of title by a grant from the Government.

The fact that a subsequent grant to other parties of other lands was therein bounded by " the boundary of the Vallecito grant," is no evidence of a change of the character of the possession already mentioned. The petitioner being in possession, any particular boundary thereof may very well have been taken as a boundary for a grant to other parties subsequently made of other lands, and the description of the land in the other grant, that it was bounded by the Vallecito grant, is inadequate as proof of the legal existence of that latter grant.

Upon the ground that there is no proof of any grant in this case, we are of opinion that the judgment of the Court of Private Land Claims was right, and it is, therefore,

*Affirmed.*