AIGAMAUA FAMILY of Leone, SALAVEA OTELA of Leone, Plaintiffs

v.

POLOA of Leone, Defendant

No. 30-1949

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Feologi" in Leone]

September 17, 1949

A. A. MORROW, *Chief Justice;* TIUMALU, *District Judge;* and MALEPEAI, *District Judge.*

Heard at Fagatogo Tuesday, September 6, 1949.

Lelafu for Aigamaua; Save for Salavea O.; Atafao for Poloa.

MORROW, *Chief Justice.*

Poloa filed an application to have the land Feologi in Leone registered as the communal family land of the Poloa title. Aigamaua filed an objection to the proposed registration claiming that the land was the property of the Aigamaua family. Salavea Otela also filed an objection claiming that the surveyed land was his individually owned property. Hence this litigation. See Sec. 905 of the A. S. Code. A survey of the land was filed with the application. The court viewed the land in the presence of the parties prior to the hearing.

At the hearing Aigamaua claimed only a strip approximately 20 feet wide on the north side of the tract. The witnesses for Poloa testified that the entire surveyed tract had been used by the Poloa family for plantations for many years. Poloa herself testified that she was 34 years old and that her people had been going on the land and using it to her knowledge since she was 6 years old. The witnesses for Salavea Otela testified that the land except the above 20 foot strip claimed by Aigamaua had been used by the Salavea people ever since 1909. There was evidence indicating that Feologi was not used by the Poloa people prior to the end of World War II. However, the evidence warrants the conclusion that whatever use was made of Feologi by the Poloa people it was in conjunction with a similar and concurrent use by the Aigamaua people with respect to the 20 foot strip and the Salavea people with respect to the remainder. The witnesses for Salavea as well as the witnesses for Aigamaua testified that the strip claimed by Aiga-

maua had been used by the Aigamaua people for many years. We believe that this is true.

Even if the whole or any part of the surveyed tract was used by the Poloa people for 20 years preceding the offer to register such use did not ripen into a title by adverse possession, as the evidence clearly showed that the possession of the Poloa people was not exclusive but in conjunction with the possession of the Aigamaua people as to the 20 foot strip and the Salavea people as to the remainder. Exclusiveness of possession is a necessary element of title by adverse possession. "In order that title may be acquired by adverse possession, the possession of the claimant must be clear, distinct, exclusive, and likewise must be unequivocal. . . . It is impossible for each of two persons or corporations to be in the exclusive possession of the same premises at the same time." 2 C.J.S. 565–6. "The possession must be adverse, exclusive and uninterrupted, and inconsistent with the existence of title in another." Mr. Justice Peckham in *Peabody v. U.S.*, 175 U.S. 546, 550. "To be effective as a means of acquiring title, the possession of an adverse claimant must be exclusive of the true owner. The owner must be wholly excluded from possession by claimant. Any sort of joint or common possession by claimant and the owner or a tenant of the owner prevents the possession of claimant from having the requisite quality of exclusiveness. In these circumstances, the law refers the possession to the person having the legal title." 2 C.J.S. 566–7.

We are convinced from the evidence that the use, occupation and possession by the Poloa people was in common with the Aigamaua people with respect to the 20 foot strip claimed by Aigamaua and in common with the Salavea people with respect to the remainder of the tract claimed by Salavea Otela. Under the law and the evidence we reach the conclusion than [sic] that the Poloa people did not acquire title to any part of it by adverse possession.

The evidence clearly preponderates in favor of the view that the 20 foot strip on the north side of the surveyed tract has been occupied and used by the Aigamaua people for many, many years and for a period long antedating any partial use of it by the Poloa people in conjunction with them. We believe from the evidence that this 20 foot strip is the communal family land of the Aigamaua title.

There is no dispute in the evidence that prior to 1909 the part of the surveyed tract south of the above 20 foot strip was the property of the Poloa. However, the evidence is almost conclusive to the effect that in 1909 Poloa Taufusia crept under the mosquito net of Siene, a 12 year old girl of the Salavea family and committed a sexual offense upon her body; that the custom was to kill such an offender; that to save the life of Poloa Taufusia the land not including the 20 foot strip was given by the Poloa people to the Salavea people. Siene, now 52 years old, testified as to the wrong done her by Poloa Taufusia. Vailuu testified that he was present at the ceremony when the gift was made. Seliga, an older member of the Poloa family, said on the stand "I admit that this land Feologi was owned by the Poloa family and it was given outright by the Poloa family on account of misconduct done by Poloa Taufusia. He forced a virgin girl of the Salavea family." She said that she heard the speech "made when this was given."

In the light of the evidence we can reach no other conclusion than that the part of the land claimed by Salavea (that is the surveyed tract excepting the 20 foot strip) is Salavea property. The Poloa people, if they did occupy this land as claimed by them, did not gain title to it by adverse possession, their possession not being exclusive.

We hold that that part of the surveyed tract south of the 20 foot strip is the property of the Salavea and that the 20 foot strip is the communal family land of the Aigamaua title.

We now have to determine whether the part of the surveyed tract owned by Salavea is owned by him as an individual or in his capacity as matai of the Salavea family. He claimed at first that it was his individual property on the theory that it was given by the Poloa people to his father as an individual and not as a matai. If such was the case then the property is not owned by Salavea alone but by Salavea and his living brothers and sisters and the heirs of his deceased brothers and sisters. Referring to the ownership of the land Salavea said on the stand "What my sister has is mine and what I have is hers and what belongs to my brothers belongs to me also." Again he testified ". . . why I am calling the land mine is because I am holding the mataiship now and I am responsible for all that happens." He was then asked "Then you feel you are responsible as the matai of the family?" to which he answered "Yes." This query was put to him: "Then you really must consider this as land of the family?" he answered "It could be." We conclude that the evidence preponderates in favor of the view that the part of the land claimed by Salavea is the communal family land of that family and not the individually owned property of Salavea himself, and we so hold.

In accordance with the foregoing it is ORDERED, ADJUDGED and DECREED that the aforementioned 20 foot strip shall be registered as the communal family land of the Aigamaua. Such 20 foot strip is described as follows:

Beginning at a point lying in and 29.15 feet from the northern end of the boundary marked N 51°57′ E, 87.91 feet on the survey; thence N 51°57′ E, 29.15 feet; thence S 86°21′ E, 164.49 feet; thence S 82°22′ E, 47.16 feet; thence N 89°11′ E, 82.36 feet; thence S 0°57′ E, 23 feet; thence N 86°21′ W, 315 feet to the point of beginning.

It is further ORDERED, ADJUDGED and DECREED that the remainder of the land Feologi as shown in the

survey (which remainder lies south of the above boundary designated N 86°21′ W, 315 feet) shall be registered as the communal family land of Salavea Otela in his capacity as matai of the Salavea family. The Registrar of Titles will be advised of this decree.

Inasmuch as Poloa paid for having the survey made and the Aigamaua and the Salavea will derive the benefit therefrom, costs will be assessed against them instead of Poloa. It is ORDERED that Aigamaua pay costs in the sum of $2.50 within 30 days and that Salavea Otela pay costs in the sum of $22.50 within such period.