UPEN G. PATEL AND AVANTI D. PATEL, PETITIONERS
*v*. COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 11694–09.             Filed June 27, 2012.

At the end of May 2006, Ps purchased property in Vienna, Virginia (Vienna property), with the intention to demolish the house situated thereon (house) and construct a new one on the site. Their realtor told them about the Fairfax County Fire and Rescue Department (FCFRD) Acquired Structures Program, where a property owner allows FCFRD to conduct live fire training exercises on his or her property. As part of the exercises, FCFRD destroys, by burning, the designated building on the owner's property. Within a few weeks of purchasing the Vienna property, Ps contacted FCFRD and obtained information about the requirements for participating in the program. After Ps obtained a demolition permit and completed all of the other requirements, they executed documents granting FCFRD the right to conduct training exercises on the Vienna property and to destroy the house by burning during the exercises. During October 2006, FCFRD, along with six other fire departments, used the Vienna property to conduct live fire training exercises, during which the house was destroyed. On their 2006 Federal income tax return, Ps reported a noncash charitable contribution of $339,504 on Schedule A, Itemized Deductions, for the donation of the house to FCFRD. R disallowed the deduction Ps claimed for 2006 and asserts that Ps' donation to FCFRD was a contribution of a partial interest in property, a deduction for which is denied by I.R.C. sec. 170(f)(3). *Held*: A landowner's grant to a fire department of the right to conduct training exercises on his property and destroy a building thereon during the exercises is a mere license that permits the fire department to do an act which without such a grant would be illegal and which conveys no interest in the property to the fire department. *Held*, *further*, taxpayers who grant a fire department the right to conduct training exercises on their property and destroy a building thereon during the exercises do not donate any ownership interest in property to the fire department, and I.R.C. sec. 170(f)(3) denies them a charitable contribution deduction for the donation of the use of their property regardless of the value of that use. *Held*, *further*, Ps donated only

the use of the Vienna property and the house to FCFRD, a partial interest in the property, and pursuant to I.R.C. sec. 170(f)(3) are not entitled to the $92,865 noncash charitable contribution deduction claimed on their 2006 income tax return under I.R.C. sec. 170(a). *Held*, *further*, Ps acted with reasonable cause and in good faith and are accordingly not liable for any accuracy-related penalty under I.R.C. sec. 6662(a) or (h).

Upen G. Patel and Avanti D. Patel, pro sese.
*Erin R. Hines*, for respondent.

OPINION

DAWSON, *Judge*: Petitioners petitioned the Court for redetermination of a deficiency of $32,672 in their Federal income tax for 2006 and an accuracy-related penalty of $6,534.40 under section 6662.[1] This case is before us on respondent's motion for partial summary judgment pursuant to Rule 121 filed on July 19, 2011. Petitioners object to the motion and filed a response. Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994); *Zaentz v. Commissioner*, 90 T.C. 753, 754 (1988). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. *Dahlstrom v. Commissioner*, 85 T.C. 812, 821 (1985); *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982).

Although the parties have not stipulated any of the facts in this case, they agree there are no disputes as to genuine issues of material facts. On the basis of our review of the record, we are satisfied that there is no genuine issue as to any material fact and that judgment may be rendered as a matter of law.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by respondent,[2] the issues for decision are (1) whether petitioners are entitled to the noncash charitable contribution deduction under section 170(a) in connection with their granting the Fairfax County Fire and Rescue Department (FCFRD) the right to conduct training exercises on their property and demolish the house thereon during the exercises, and (2) whether petitioners are liable for the accuracy-related penalty under section 6662.

## *Background*

Petitioners resided in Virginia when their petition was filed. In 2006 petitioners resided in Haymarket, Virginia. On May 31, 2006, they purchased property in Vienna, Virginia (Vienna property), for $625,000 and acquired the fee simple interest therein. The Vienna property consisted of a 1,221-square-foot brick house (house) situated on a 22,786-square-foot lot. Petitioners purchased the Vienna property with the intent to demolish the house, which had been built in 1960, and build a new one to their specifications. Petitioners never resided in the house, nor did they reside on any part of the Vienna property during 2006. In May 2006, before closing on the Vienna property, petitioners engaged Atlantic Coast Inspection Services, LLC, to complete a home inspection of the house that included an asbestos report. They also obtained an appraisal dated May 14, 2006, from William Fluharty of Reliable Appraisal Service. Mr. Fluharty valued the entire property (including the house and land) at $625,000. Petitioners subsequently obtained a second appraisal from Mr. Fluharty, dated September 1, 2006, that valued the entire property at $660,000.

Petitioners learned of the FCFRD Acquired Structures Program from the realtor who represented them in their purchase of the Vienna property. The program was designed to provide "real life" training for emergency personnel by using structures for training exercises. Under the program the property owner allows the FCFRD to conduct live fire training exercises on his or her property. As part of the exercises, FCFRD destroys, by burning, the designated building on the

---

[2] Respondent has conceded that petitioners are entitled to deductions claimed on Schedule A, Itemized Deductions, for taxes of $18,074 and mortgage interest of $37,428 for 2006. These amounts will be allowed and reflected in the Rule 155 computations.

owner's property. In June 2006, petitioners contacted the FCFRD about its program. On June 12, 2006, FCFRD acknowledged petitioners' interest in participating in the program and sent them a Standard Property Owner Package.

In order to participate in the program, petitioners were required to (1) permit FCFRD to inspect the house to determine its training value; (2) have the house inspected and remove any asbestos found as a result of such inspection; (3) obtain a demolition permit; (4) sign certificates of authorization and temporary release forms; (5) disconnect and/or remove any utilities from the house; and (6) provide all required documentation to FCFRD at least two weeks before the planned demolition.

Petitioners hired MW Construction in Alexandria, Virginia, to construct a new house on the Vienna property after the old house was demolished. As part of the contract, MW Construction was to remove the debris from the burning of the house after the fire training exercises were completed.

On or about July 20, 2006, petitioners requested a demolition permit for the Vienna property from Fairfax County. The application for the permit required petitioners to provide the name, address, telephone number, State contractor's license number, and Fairfax County business license number of the licensed contractor that would perform the work.[3] On September 28, 2006, Fairfax County issued a demolition permit to "Demolish Entire Structure" (permit No. 62010212) to Upen Patel showing MW Construction as the contractor.

Because the May 2006 home inspection report indicated that asbestos was present in the house in the basement floor tile and baseboard, petitioners hired Young Environmental to remove the asbestos. Young Environmental removed the materials containing asbestos on or about July 24, 2006, and sent a letter of completion to petitioners, along with an invoice for its services.

On August 25, 2006, petitioners obtained a construction mortgage loan of $943,575 from Suntrust Mortgage, Inc. They used a portion of the loan to pay off a mortgage from

---

[3] Under Virginia law contracting without the proper license or certificate to remove improvements on real property owned, controlled, or leased by another person is a class 1 misdemeanor and a violation of the Virginia Consumer Protection Act. Va. Code Ann. sec. 54.1–1115(A)(1), (B) (2009); *see Tuggle Masonry, Inc. v. Dailey*, 2010 WL 7372379, at *1 (Va. Cir. Ct. 2010).

Wells Fargo Bank, N.A., and a home equity loan from National City.

On September 14, 2006, petitioners executed two forms required by FCFRD for participation in the program: (1) the Live Fire Training Exercise Certificate of Authorization Form (authorization form), and (2) the Certificate of Authorization/ Temporary Liability Release Form (release form). On the authorization form petitioners certified that they were the true owners of the Vienna property and granted FCFRD permission to use the Vienna property as follows:

This is to certify that: ~~UPEN PATEL & AVANTI PATEL~~ * * * is the true owner or authorized agent of the property located at (address): * * * [the Vienna property address] * * *.

Permission is herby [sic] granted to the Fairfax County Fire and Rescue Department to utilize for training such building(s) designated on the above describe property. In return, Fairfax County agrees not to bring suit to exercise its right of subrogation under Virginia Code 65.1–41 (Repl. Vol. 1980) against the property owner and/or his/her representative for any personal injury to a Fairfax County Career or Volunteer Firefighter during the training period. Fairfax County further agrees not to bring suit for damage to any self-insured equipment during the training session.

Signed:       ~~Upen Patel and Avanti Patel~~     Date:    ~~9/14/06~~
           Property Owner or Authorized Representative

Signed:    _____   Date:   _____
           Fairfax County Representative

On the release form petitioners certified that they were the owners of the Vienna property and that they had obtained a permit to demolish the house on the Vienna property and granted FCFRD permission to use the house for training as follows:

This is to certify that I, ~~UPEN PATEL & AVANTI PATEL~~ * * * am the true owner or authorized agent of the owner of the property located at (address): * * * [the Vienna property address] * * *.

I further certify that a Demolition Permit has been secured from the Department of Environmental Management, Permit Branch, and is described as Permit # ~~62010212~~ issued on (date) ~~9/2/2006~~, and that all public utilities have been removed or disconnected from the above described property.

I herby [sic] grant permission to the Fairfax County Fire and Rescue Department to conduct a training exercise on the above premises and to destroy, by burning, such building(s) as designed on the above described property. I agree to remove any remaining hazardous conditions including but not limited to open pits, basements and wells, standing walls and

chimney, and burned and unburned debris after the completion of the training exercise. I understand that the designated building(s) may not be destroyed or may only be partially destroyed by the Fairfax County Fire and Rescue Department if circumstances beyond the control of the Fairfax County Fire and Rescue Department should arise.

It is agreed that I will not hold Fairfax County or the Fairfax County Fire and Rescue Department or any of its officers, agents, or employees liable for any damage to the above described property. In return, Fairfax County agrees not to bring suit to exercise its right or subrogation under Virginia Code 65.1–41 (1987) against me and/or my representative for any personal injury to a Fairfax County Career or Volunteer Firefighter incurred during the training exercise on the site. Fairfax County further agrees not to bring suit for damage to any self-insured equipment incurred during the training exercise on the site.

Signed:          ~~Upen Patel and Avanti Patel~~          Date:     ~~9/14/06~~
                 Property Owner or Authorized Representative

Signed:     _____     Date:     _____
            Fairfax County Representative

On September 29, 2006, petitioners sent to FCFRD all of the documents necessary to participate in the program. None of the documents purport to transfer title to the house or the Vienna property or any ownership interest therein to Fairfax County or FCFRD.

During October 2006, FCFRD, along with six other fire departments, used the Vienna property to conduct live fire training exercises. The house was demolished by fire during the training exercises. On October 23, 2006, FCFRD sent petitioners an acknowledgment letter thanking them for their donation and expressing their appreciation for petitioners' allowing them to use the Vienna property for the training exercises.

On October 23, 2006, MW Construction was given access to the Vienna property to remove the debris and begin construction of the new house. The construction was completed in July 2007. Petitioners subsequently obtained a residential use permit and moved into the new house, where they currently reside.

On their 2006 Federal income tax return, petitioners reported a noncash charitable contribution of $339,504 on Schedule A. The contribution of $339,504 consisted of only the claimed donation of the house on the Vienna property. In accordance with the limitations of section 170(b) and the regulations thereunder, petitioners deducted $92,865 as a

noncash charitable contribution for 2006. [4] Petitioners filed their 2006 tax return electronically. They submitted Form 8283, Noncash Charitable Contributions, with the return; however, Form 8283 was not signed by the appraiser or the donee because of the electronic submission. Petitioners retained a fully signed copy of Form 8283 which they later submitted to respondent upon request.

On February 17, 2009, respondent sent petitioners a notice of deficiency for their 2006 tax year disallowing their claimed noncash charitable contribution deduction of $92,865 and determined an income tax deficiency of $32,672 and an accuracy-related penalty of $6,534 under section 6662.

## *Discussion*

### I. *Charitable Contribution Deduction*

#### A. *Noncash Charitable Contribution Deduction Under Section 170*

Section 170(a)(1) provides in relevant part that a deduction is allowed for any charitable contribution, payment of which is made within the taxable year. Section 170(c)(1) defines the term "charitable contribution" to include a contribution or gift to or for the use of, inter alia, a political subdivision of a State, but only if the gift is made for exclusively public purposes. Contributions or gifts to nonprofit volunteer fire companies are deemed to be for the use of a political subdivision of a State for exclusively public purposes and are deductible under section 170(c)(1). Rev. Rul. 71–47, 1971–1 C.B. 92; *see also* Rev. Rul. 74–361, 1974–2 C.B. 159.

Before 1969 a taxpayer could deduct contributions to charitable organizations of partial interests in the taxpayer's property, including income and remainder interests and the right to use the property. *See, e.g.*, *Thriftimart, Inc. v. Commissioner*, 59 T.C. 598 (1973). The only limitation placed on contributions of partial interests, found in what was then section 170(f), delayed the deduction for contributions of future interests in tangible personal property until all intervening interests in the property had expired. For purposes of that

---

[4] The remaining $246,639 of the reported contribution for 2006 has been carried forward by petitioners under sec. 170(d) and the regulations thereunder. The full amount of the contribution, which includes the amount deducted for 2006 and the carryover amounts, is at issue in this case.

limitation, a fixture that was intended to be severed from real property was treated as a future interest in tangible personal property and not as real property.

Congress became concerned that the amount of a charitable contribution deduction for a partial interest in property might not correspond to the value of the benefit ultimately received by the charity and that taxpayers were receiving a double benefit from donations of the use of property for a period of time. *See* S. Rept. No. 91–552, at 83–87 (1969), 1969–3 C.B. 423, 477–479; *see also* H.R. Rept. No. 91–413, at 57 (1969), 1969–3 C.B. 200, 237–239. In the Tax Reform Act of 1969, Pub. L. No. 91–172, sec. 201(a), 83 Stat. at 549, Congress amended section 170 to address those concerns by, inter alia, moving the limitation previously provided in section 170(f) to new section 170(a)(3) and adding a new section 170(f). Section 170(f)(2) denies a charitable contribution deduction for certain contributions of interests in property placed in trust: Section 170(f)(2)(A) disallows a deduction for contributions of remainder interests in property placed in trust unless the trust is a charitable remainder annuity trust or a charitable remainder unitrust or a pooled income fund, and section 170(f)(2)(B) disallows a deduction for the value of any other interest in property placed in trust, unless the interest is a guaranteed annuity or fixed percentage of the trust property distributed annually. Section 170(f)(3) denies a charitable contribution deduction for certain contributions of partial interests in property and provides as follows:

(3) DENIAL OF DEDUCTION IN CASE OF CERTAIN CONTRIBUTIONS OF PARTIAL INTERESTS IN PROPERTY.—

(A) IN GENERAL.—In the case of a contribution (not made by a transfer in trust) of an interest in property which consists of less than the taxpayer's entire interest in such property, a deduction shall be allowed under this section only to the extent that the value of the interest contributed would be allowable as a deduction under this section if such interest had been transferred in trust. For purposes of this subparagraph, a contribution by a taxpayer of the right to use property shall be treated as a contribution of less than the taxpayer's entire interest in such property.

(B) EXCEPTIONS.—Subparagraph (A) shall not apply to—

(i) a contribution of a remainder interest in a personal residence or farm,

(ii) a contribution of an undivided portion of the taxpayer's entire interest in property, and

(iii) a qualified conservation contribution.

Congress described the purpose of section 170(f)(3) as follows:

> *General reasons for change*.—An individual receives what may be described as a double benefit by giving a charity the right to use property which he owns for a given period of time. For example, if the individual owns an office building, he may donate the use of 10 percent of its rental space to a charity for 1 year. As a result, he may report for tax purposes 90 percent of the income which he otherwise would have had if the building was fully rented, and may claim a charitable deduction (amounting to 10 percent of the rental value of the building) which offsets his reduced rental income. [H.R. Rept. No. 91–413, *supra* at 57, 1969–3 C.B. at 237.]

*Accord* S. Rept. No. 91–552, *supra* at 83, 1969–3 C.B. at 477. Section 170(f)(3) is considerably broader in scope than that articulated purpose, *Stark v. Commissioner*, 86 T.C. 243, 250 (1986), and it reflects Congress' concern that the amount of a charitable contribution deduction might not correspond to the value of the benefit ultimately received by the charity.

Respondent contends that petitioners donated to FCFRD merely the right to use the Vienna property. Respondent argues alternatively that if petitioners transferred an ownership interest in the house to FCFRD, they nonetheless retained substantial interest in the Vienna property and the house. Respondent concludes therefore that petitioners contributed a partial interest in the property, a deduction for which is prohibited under section 170(f)(3)(A).

Petitioners assert that their granting FCFRD the right to destroy the house by burning conveyed to FCFRD all of their rights, title, and interest in the house and not merely the use of the Vienna property.[5] They assert that there is no requirement that the land be transferred with the house and, therefore, they are entitled to a charitable contribution deduction for the value of the house.

Whether petitioners' contribution to the FCFRD constitutes a transfer of a partial interest in property for the purposes of section 170(f) is ultimately a question of Federal law. *See United States v. Craft*, 535 U.S. 274, 278 (2002). The answer

---

[5] Petitioners assert that had they given FCFRD only the use of the house, they would have expected FCFRD to return it in essentially the same state as it was before the use. We do not think that such an expectation is particularly relevant where a donor intends to make improvements to his real property that require the destruction of the existing building situated on the land. Allowing FCFRD to burn the house during its training exercises so that petitioners might construct a new house on the site is consistent with and necessary for petitioners' intended use of the Vienna property.

to this Federal question, however, depends in part upon State law, which creates and governs the nature of interests in property. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985); *United States v. Mitchell*, 403 U.S. 190, 197 (1971); *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967).

"A common idiom describes property as a 'bundle of sticks'—a collection of individual rights which, in certain combinations, constitute property." *Craft*, 535 U.S. at 278–279. "Likewise, ownership of property is not a single indivisible concept but rather an aggregate or bundle of rights pertaining to the property involved." *Molbreak v. Commissioner*, 61 T.C. 382, 390 (1974), *aff'd*, 509 F.2d 616 (7th Cir. 1975). "State law determines only which sticks are in a person's bundle." *Craft*, 535 U.S. at 279. Once property rights are determined under State law, as announced by the highest court of the State, the tax consequences are decided under Federal law. *Commissioner v. Estate of Bosch*, 387 U.S. 456; *Aquilino v. United States*, 363 U.S. 509, 512–513 (1960); *Morgan v. Commissioner*, 309 U.S. 78 (1940).

Accordingly, we first look to Virginia law to determine what property rights petitioners had in the house and what property rights in the house were given to FCFRD. In looking to State law, we consider the substance of the property rights State law provides, including the benefits and burdens of such rights, not merely the labels the State gives these rights or the conclusions it draws from them. *Craft*, 535 U.S. at 279.

B. *Virginia Real Property Law: House Is Part of the Land*

In Virginia the common law continues in full force except as altered by the General Assembly of Virginia.[6] Va. Code Ann. sec. 1–200 (2011); *Brown v. Brown*, 32 S.E.2d 79, 80 (Va. 1944). By the original rule of common law everything that was affixed to land held in fee simple was considered to be a part of it. *Marraro v. State*, 189 N.E.2d 606, 610 (N.Y. 1963). Under Virginia statutory law the terms "land", "lands", and "real estate" are synonymous and include

---

[6] Va. Code Ann. sec. 1–200 (2011) provides: "The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly."

"lands, tenements[7] and hereditaments,[8] and all rights and appurtenances thereto and interests therein, other than a chattel interest".[9] Va. Code Ann. sec. 1–219 (2011) (formerly sec. 1–13.12). In *Stuart v. Pennis*, 22 S.E. 509, 510 (Va. 1895), the Supreme Court of Appeals of Virginia held:

Land includes everything belonging or attached to it, above and below the surface. It includes the minerals buried in its depths, or which crop out of its surface. It equally includes the woods and trees growing upon it. Rooted and standing in the soil, and drawing their support from it, they are regarded as an integral part of the land, just as the coal, the iron, the gypsum, and the building stone which enter so largely into the business of commerce. Attached to the soil, they pass with the land, as a part of it. * * *

The definition of land under Virginia law, as interpreted by the Virginia Court, is the widely recognized ordinary legal definition of land that derives from the common law. *See* 1 Tiffany Real Prop., secs. 3, 10 (2011); Webster's Third New International Dictionary 1268 (2002); Black's Law Dictionary 954 (9th ed. 2009). Under the common law, a fixture [10] attached to the land,[11] including a structure erected on the land, is regarded as part of the land and remains so unless and until it is severed from the land.[12] *Myers v. Hancock*, 39 S.E.2d 246, 248 (Va. 1946); *Stuart*, 22 S.E. at 510; *Baker v. Jim Walter Homes, Inc.*, 438 F. Supp. 2d 649 (W.D. Va. 2006).

---

[7] "The word 'tenement' means either an estate or holding of land, or a house or other building used as a residence." *Pardoe & Graham Real Estate, Inc. v. Schulz Homes Corp.*, 525 S.E.2d 284, 286 (Va. 2000) (citing Black's Law Dictionary 1480 (7th ed. 1999), and 1 Raleigh Colston Minor & Frederick Deane Goodwin Ribble, The Law of Real Property sec. 17 (2d ed. 1928)).

[8] "The term 'hereditament,' in general, signifies any interest in real property that may be inherited by an owner's heirs." *Pardoe*, 525 S.E.2d at 286 (citing 1 Minor & Ribble, *supra* sec. 17, and Caroline N. Brown, 4 Corbin on Contracts sec. 17.1 (rev. ed. 1997)).

[9] A chattel interest is an interest that is less than a freehold such as a lease for a year or term of years. *Hannan v. Dusch*, 153 S.E. 824, 827 (Va. 1930).

[10] A fixture is an article of personal property that "by being affixed to the realty, became accessory to it and parcel of it." *Green v. Phillips*, 67 Va. [26 Gratt. 752] 250, 252, 1875 WL 5726 (1875). "A thing is deemed to be affixed to land when it is attached to it by roots, imbedded in it, permanently resting upon it, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws". *Dowdy v. Silverstein*, 1981 WL 180584, 2 (Va. Cir. Ct. 1981) (*citing* Black's Law Dictionary 574 (5th Ed. 1979)).

[11] Movable buildings and fixtures that have never been attached to the land never become a part of the land and remain personal property. *Pardoe*, 525 S.E.2d at 286; *Commonwealth v. Pembroke Limestone Works*, 134 S.E. 717, 720 (Va. 1926). However, once a structure is erected and attached to the land, it becomes real property and part of the land. *Pardoe*, 525 S.E.2d at 286.

[12] The common law definition of land is recognized in all 50 States. See, e.g., cases listed *infra* app. A wherein the courts apply the law of fixtures to determine whether an item is sufficiently "attached" to the land that it is considered part of the real property.

Where a taxpayer contributes to a charity an interest in a building that is part of the land under State law but retains all title to and interest in the remaining land, the taxpayer has donated less than his entire interest in the land. The taxpayer will not be allowed a charitable contribution deduction unless the donated interest falls within the exceptions of section 170(f)(3)(B).

In the case at hand, the house was attached to the land and was conveyed to petitioners along with the land when they purchased the Vienna property. Under the common law and the laws of Virginia, the house was part of the land that is the real estate we refer to as the Vienna property. Petitioners' purported contribution of the house to FCFRD was a contribution of less than their entire interest in the Vienna property.

### C. *Permissible Partial Interests: Section 170(f)(3)(B)*

Pursuant to section 170(f)(3), where a taxpayer contributes to a charitable organization an interest in a house considered part of the land under State law but retains a substantial interest in the remaining land the taxpayer will not be allowed a charitable contribution deduction unless the donated interest is (i) an undivided portion of the taxpayer's entire interest in property, (ii) a remainder interest in a personal residence, or (iii) a qualified conservation contribution.

### 1. *Undivided Portion of Property*

Pursuant to section 170(f)(3)(B)(ii) a taxpayer is allowed a deduction for a contribution of "an undivided portion of the taxpayer's entire interest in property". Section 1.170A–7(b)(1)(i), Income Tax Regs., provides in relevant part:

(1) *Undivided portion of donor's entire interest.* (i) An undivided portion of a donor's entire interest in property must consist of a fraction or percentage of each and every substantial interest or right owned by the donor in such property and must extend over the entire term of the donor's interest in such property and in other property into which such property is converted. For example * * * . * * * If a taxpayer owns 100 acres of land and makes a contribution of 50 acres to a charitable organization, the charitable contribution is allowed as a deduction under section 170.

If a donor contributes some of the rights in the property and retains other substantial rights, the donated rights in

the property are not an undivided portion of the entire interest. The substantiality of the donor's interest in the retained property is determinative. *Stark v. Commissioner*, 86 T.C. 243 (Tax Court held mineral interest retained by taxpayer was insubstantial).

In *Walshire v. United States*, 288 F.3d 342 (8th Cir. 2002), the Court of Appeals for the Eighth Circuit upheld the validity of section 25.2518–3(b), Gift Tax Regs., which provides the same definition for an undivided portion of a disclaimant's entire interest in property for purposes of section 2518.[13] In discerning the meaning of "undivided interest", the Court of Appeals stated:

The term "undivided" in its common usage means "not separated out into parts or shares." Webster's Third New International Dictionary 2492 (1986). We are most familiar with the concept of undivided interests in the context of a tenancy in common, which is "[a] tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property." Black's Law Dictionary 1478 (17th [sic] ed. 1999). "'The central characteristic of a tenancy in common is simply that each tenant is deemed to own by himself, with most of the attributes of independent ownership, a physically undivided part of the entire parcel.'" *Id.* (quoting Thomas F. Bergin & Paul G. Haskell, Preface to Estates in Land and Future Interests 54 (2d ed. 1984)). From these uses of the term "undivided," we discern that an undivided portion of an interest is a portion that does not separate out the bundle of rights associated with the interest being apportioned. Thus, * * * an undivided portion of that [fee simple] interest would have to include all of the rights associated with the fee. * * * [*Walshire*, 288 F.3d at 347–348.[14]]

The "bundle of sticks" that constitutes land situated in Virginia includes the rights with respect to the surface of the land, the minerals in the land, the timber growing on the land, structures attached to the land, and the air space over the land. An undivided portion of a donor's entire interest in the land must consist of a fraction or percentage of each and

[13] Sec. 2518 allows the donee of an interest in property to disclaim an undivided portion of a transferred interest, and that portion of the interest is treated as having never been transferred to him for gift or estate tax purposes.

[14] If a landowner who owns a 100-acre parcel of land conveys 50 acres to a charitable organization, the conveyance severs the 50 acres from 50 acres retained by the landowner and creates two separate lots. The example provided in the regulations treats the 50 acres as an undivided interest in the 100 acres. Sec. 1.170A–7(b)(1)(i), Income Tax Regs. This is consistent with and reflects the cotenants' right to have the land partitioned. Under the regulations the transfer of the 50-acre lot to the charitable organization is a contribution of a partial interest in the original 100-acre parcel—an undivided interest in the 100 acres for which a charitable contribution deduction is permitted.

every one of those "sticks" and must extend over the entire term of the donor's interest in such property. Thus, a charitable contribution of an interest in the land does not constitute a contribution of an undivided portion of the donor's entire interest if the donor transfers some sticks and retains substantial rights in others. *Stark v. Commissioner*, 86 T.C. 243.

We observe that while some of the sticks, e.g., minerals buried in the land and soil covering the surface of the land, extend over the entire property, others such as fixtures attach to one specific location; e.g., a building occupies only the land immediately under its footprint. A landowner can convey by metes and bounds any part of the land or convey all or a portion of his interest in the minerals, the timber, or the structures, severing the transferred interest in the land from the interest retained, creating separate estates in the land. [15] *See, e.g., United Masonry, Inc. v. Jefferson Mews, Inc.*, 237 S.E.2d 171, 181–182 (Va. 1977) (area above the land may be subdivided into a number of three-dimensional air spaces, each susceptible of being separately conveyed; severance of condominium units from the soil is "an estate in the subdivided cubes in the sky" analogous to the accepted rule that minerals below the topsoil may be severed from the surface lot); *Morison v. Am. Ass'n*, 65 S.E. 469 (Va. 1909) (land was divided into a surface estate and a mineral estate); *Bluefield Timber, LLC v. Harlan Lee Land, LLC*, 2006 WL 6185856, at *1 (Va. Cir. Ct. 2006) (the interests in the parcel consisted of three separate and distinct estates: an undivided interest in 60% of the timber; a 60% undivided interest in the surface; and a 40% interest in the fee simple).

When a taxpayer transfers a fee interest in land to a charitable organization while retaining substantial mineral rights, he does not transfer an undivided interest in the land. *See Stark v. Commissioner*, 86 T.C. at 254. Similarly, the transfer of mineral rights would constitute an undivided interest in the land only if the taxpayers' retained interest

---

[15] In Virginia, an interest in land must be conveyed by deed or will. Va. Code Ann. sec. 55–2 (2007); *FDIC v. Hish*, 76 F.3d 620, 623 (4th Cir. 1996). "The requirements for a deed are 'competent parties, a lawful subject matter, a valuable consideration, apt words of conveyance, and proper execution.'" *Lim v. Choi*, 501 S.E.2d 141, 143 (Va. 1998) (quoting *Morison v. Am. Ass'n*, 65 S.E. 469, 470 (1909)). Use of technical words or strict compliance with the Virginia statute regarding form of deed is not necessary to effect a transfer if the language used plainly shows on the face of the document a clear intent to convey title. *Id.* at 144.

in the land is insubstantial; i.e., the value of the retained interest in the land (the surface estate) is de minimis in comparison to the mineral estate. *See id.* at 247–248, 255.

Hypothetically, because the regulations treat a division of land into separate lots as an undivided interest, a taxpayer could donate just the land under the building's footprint, including the building, to a charitable organization. If local law permitted a landowner to divide his land into two such separate lots, the donation of an interest in the building alone would be an undivided interest in the land if the retained rights in the building and the land immediately under its footprint were insubstantial.

Under the common law, a fixture that is attached to the land, including a building, is regarded as part of the land unless and until it is severed from the land. *Baker*, 438 F. Supp. 2d 649; *Myers*, 39 S.E.2d at 248; *Stuart*, 22 S.E. at 510. When a landowner conveys the building and retains the land, unless the building is to be moved from the land, the building remains real property [16] and certain easements by necessity are implicitly granted to the building. An easement by necessity arising from an implied grant or implied reservation stems from the principle that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. *Middleton v. Johnston*, 273 S.E.2d 800, 803 (Va. 1981); *Jennings v. Lineberry*, 21 S.E.2d 769, 771 (Va. 1942); *see also Powell v. Magee*, 60 S.E.2d 897, 899 (Va. 1950) (if a landowner conveys the land but retains a building surrounded by the land conveyed, it will be assumed that the parties intended that the grantor has reserved a right of way (easement) over the land conveyed). Thus, if a landowner conveys the building and retains the land, it will be assumed that the parties intended that the grantor has granted the right to have the building supported by the land (the right of subjacent support), *Tunstall v. Christian*, 80 Va. 1, 1885 WL 4179 (1885); [17] *see*

---

[16] "'"A man may have an inheritance in an upper chamber, though the lower buildings and soile be in another, and seeing it is an inheritance corporeall it shall passe by livery."'" *United Masonry, Inc. v. Jefferson Mews, Inc.*, 237 S.E.2d 171, 181 (Va. 1977) (quoting commentator quoting Lord Coke).

[17] In *Tunstall v. Christian*, 80 Va. 1, 1885 WL 4179, at *1–*3 (1885), the Supreme Court of Virginia held:

Continued

*also Large v. Clinchfield Coal Co.*, 387 S.E.2d 783, 786 (Va. 1990), and a right of way over the lands has been retained by the grantor, *Powell*, 60 S.E.2d at 899 (*citing* 1 Minor on Real Property (2d ed.), 1 Ribble, at 140, sec. 101); *Jennings*, 21 S.E.2d 769.[18] These easements by necessity pass to the successors in title of the building, and they will not be extinguished by the destruction of the building but will survive and adhere to the new building the owner of the destroyed building erects on its ruins. *Stevenson v. Wallace*, 68 Va. 77 (1876).

Granting a fire department the right to destroy the building while conducting training exercises on the property does not transfer to the fire department all the benefits and burdens of ownership and title to the building. The fire department does not have the right to keep and use the building in its current condition with ingress and egress over the land retained by the landowner, to sell the building with all the rights attached thereto, or to construct a new building on the site of the destroyed building. The landowner retains those substantial rights. Indeed, petitioners granted FCFRD the right to burn the house so that they could exercise those rights. Nor does the contribution transfer the burdens of ownership of the building. The landowner must make the building suitable for use in the training exercises; e.g., by removing any asbestos present in the building, obtaining any permits required by local government, and disconnecting

---

It is well settled that the right to support for land from the adjacent and subjacent soil is a natural right, analogous to the flow of a natural river or of air. It stands on natural justice, and is not dependant upon grant; * * *. But the right is confined to the soil in its natural condition. It does not extend to buildings or other artificial burdens thereon, increasing the downward and lateral pressure. * * *

The right to support for artificial burdens on land is an easement, and can be acquired only by grant, express or implied. * * *

* * * * * * *

* * * The right [to subjacent support] is also implied where property, consisting of a house and unimproved land, is severed by sale. And the right to support, thus granted and reserved, is transmitted to the successors in title of the parties respectively. * * *

[18] An easement is the privilege to use the land of another in a particular manner and for a particular purpose. *Russakoff v. Scruggs,* 400 S.E.2d 529, 531–532 (Va. 1991) (citing *Brown v. Haley*, 355 S.E.2d 563, 567–568 (Va. 1987)). If one part of the land is used for the benefit of another part (the dominant tract), a "quasi-easement" exists over the "quasi-servient" portion of the land. *Id.* at 532. That easement is conveyed by implication when the dominant tract is severed from the servient tract. The existence of the easement is established on a showing that (1) the dominant and servient tracts originated from a common grantor, (2) the use was in existence at the time of the severance, and that (3) the use is apparent, continuous, and reasonably necessary for the enjoyment of the dominant tract. *Id.* (citing *Brown*, 355 S.E.2d at 569, and *Fones v. Fagan*, 196 S.E.2d 916, 919 (1973)).

utilities. The landowner is also responsible for safeguarding the public from hazardous conditions remaining after the training exercises are completed, such as open pits, basements and wells, standing walls and chimney, and burned and unburned debris.

If the landowner conveys the building and retains the land with the intent that the building be detached and removed from the land, the easements by necessity are not granted to the building. Severance of the building from the land may be actual, by detachment of the building from the land, or it may be constructive, by express or implied agreement that it will be detached. *Myers*, 39 S.E.2d at 248. Constructive severance of a fixture that is to be detached from the land "makes the fixture an entity distinct from the land, so that it will not pass with the land upon a conveyance of the latter, if the purchaser of the land have notice of such agreement." *Id.* However, since the fixture is real property until severance, a transfer of the fixture is a transfer of real property. *Id.*

To effect a constructive severance of a building from land, the transfer ordinarily must be in a writing in a form sufficient for a *conveyance* of land, 2 Tiffany Real Property, sec. 624 (3d ed. 1939); i.e., to effect a constructive severance, the writing must convey *ownership and title* to the building. The grant of an easement, a lease, or a license will not constructively sever the building from the land.

Granting a fire department the right to destroy the building while conducting training exercises on the property is not a conveyance of ownership, title, or possession of the building or any other property interest in the building or the Vienna property. Rather it is a mere license to use the property.

A license is a right, given by some competent authority, to do an act which without such authority would be illegal, a tort, or a trespass. *Bunn v. Offutt*, 222 S.E.2d 522 (Va. 1976). A license is a mere unassignable privilege that is personal between the licensor and the licensee and passes no interest in any portion of the land to the licensee. *Peabody v. United States*, 175 U.S. 546, 550 (1899) (citing *De Haro v. United States*, 72 U.S. 599, 627 (1866)); *Bunn v. Offutt*, 222 S.E.2d 522. The stated definition, scope, and effect of a license is the widely recognized ordinary legal definition of license that

derives from the common law. [19] *See* 3 Tiffany Real Prop., *supra*, secs. 829, 831; Webster's Third New International Dictionary 1304; Black's Law Dictionary 1002–1003.

The Supreme Court of Appeals of Virginia has established a well-marked dividing line between the class of agreements that constitute revocable licenses and those that grant either an estate or easement in land. *Church v. Goshen Iron Co.*, 72 S.E. 685, 686 (Va. 1911). In order to ascertain whether an instrument must be construed as more than a mere license, it is only necessary to determine whether the grantee has acquired by it any estate in the land in respect of which he might bring an action of ejectment. *Id.* For an instrument to constitute more than a mere license, there must be an exclusive right of possession vested in the grantee. If the land is still to be considered in the possession of the grantor, the instrument will only amount to a license. *Id.*

In *Bostic v. Bostic*, 99 S.E.2d 591, 594 (Va. 1957), the Supreme Court of Appeals of Virginia held that a grant merely of the right to enter and take minerals from the land is not an absolute grant of the minerals in place as real estate. Such a grant creates a mere incorporeal right, privilege, or license in the grantee that carries with it no interest in the land. *Id.* at 594–595. The grantee of the license will be entitled to do the permitted acts according to the terms of his grant and appropriate the minerals to his own use, but he will acquire no interest in the minerals until they are actually separated from the land and have become recoverable in an action of trover. *Id.* at 595; *Church*, 72 S.E. at 686.

In *Young v. Young*, 63 S.E. 748, 749 (Va. 1909), the Virginia Supreme Court held that a license to cut and sell timber on the land created no estate or property in the timber itself until it was actually severed from the land. In reaching that conclusion the court pointed out that a license to cut and sell timber does not vest title to the timber in the licensee before the *actual* severance of such timber. *See also Bostic*, 99 S.E.2d 591.

Granting a fire department the right to conduct training exercises on one's property and destroy a building thereon by fire grants the fire department the right "to do an act which

---

[19] Cases cited *infra* app. B indicate that license has the same definition and scope in 47 States and the District of Columbia. Our limited search on Westlaw did not identify any opinions on the issue issued by the courts of Alaska, Louisiana, or Nevada.

without such authority would be illegal, a tort, or a trespass". The fire department does not acquire the right to eject the landowner from the building and cannot force the landowner to allow the destruction of the building should he change his mind before the house has been destroyed. The fire department has acquired a mere revocable license that does not vest any property interest in the fire department.[20] Because the grant does not convey an interest in any property, it does not constructively sever the building from the land.

Moreover, when a taxpayer grants a fire department the right to destroy a building while conducting training exercises on his property, it is the destruction of the building that actually severs it from the land. Since the landowner retains rights and responsibility for the debris (everything that has not disintegrated), at the time of severance, there is no property to which title could vest in the fire department.

Although the value of the remnants of the building may be de minimis after the training exercises, property rights include not only the benefits of ownership but also its burdens. At all times, petitioners retained all the burdens of ownership of the house, except for liability for any injury to a fireman incurred during the training exercises. Petitioners as owners of the house obtained the demolition permit from the county. They were responsible for safeguarding the public from hazardous conditions created by the destruction of the house including any open pits, standing walls and chimneys, and debris remaining after the training exercises were completed. They retained a substantial ownership interest in the house in the form of their liability for any injury that might be caused by the hazardous conditions of the remnants of the building remaining after FCFRD completed its exercises.

Petitioners assert that under the holding of *Scharf v. Commissioner*, T.C. Memo. 1973–265, allowing FCFRD to destroy the house was a conveyance of the house. In *Scharf* the taxpayer owned a building that had been partially destroyed by fire, and he allowed a volunteer fire department to destroy it by fire for training purposes. Although the facts

---

[20] In Virginia, land must be conveyed by deed or will. Va. Code Ann. sec. 55–2; *FDIC v. Hish*, 76 F.3d at 623. Use of technical words or strict compliance with the Virginia statute regarding form of deed is not necessary to effect a transfer if the language used plainly shows on the face of the document a clear intent to convey title. *Lim*, 501 S.E.2d at 144.

in *Scharf* are nearly indistinguishable from the facts in this case, petitioners' reliance on *Scharf* is unfounded for multiple reasons. First, in deciding the amount of the deduction in *Scharf*, the Court held that it was not necessary to choose between the fair market value of the building in its damaged condition and the value of the donated use of the building because the values were the same. Thus, the Court did not decide in *Scharf* whether the taxpayer had donated the building or just the use of the building. Second, the Court allowed a charitable contribution deduction for the donation in *Scharf* because it held that the public benefit of firefighter training greatly exceeded the demolition benefit received by the donor taxpayer. In *Rolfs v. Commissioner*, 135 T.C. 471, 487 (2010), *aff'd*, 668 F.3d 888 (7th Cir. 2012), we held that the public benefit standard applied in *Scharf* has been superseded by the quid pro quo standard established by the Supreme Court in *United States v. Am. Bar Endowment*, 477 U.S. 105, 118 (1986). Third, one significant and distinguishable fact in *Scharf* makes the opinion inapplicable here; namely, the taxpayer in *Scharf* made the contribution in 1967, before Congress amended section 170 to disallow a deduction for contributions of partial interests in property. The amendment to section 170 makes *Scharf* inapplicable to contributions made after 1969.

We hold that petitioners did not contribute the house or an undivided interest in the Vienna property to the FCFRD.

### 2. *Remainder Interest in a Personal Residence*

A remainder is a future interest in property "limited in favor of a transferee in such manner that it can become a present interest upon the expiration of all prior interests simultaneously created". 2 Restatement, Property, sec. 156 (1936). A vested remainder ripens into title in fee upon the death of the life tenant. *See, e.g.*, *Miller v. Citizens Nat'l Bank*, 60 S.E.2d 868, 870 (Va. 1950). When a taxpayer grants a fire department a license to conduct training exercises on his land and destroy the house situated thereon during the exercise, the fire department does not receive a remainder interest, or any other interest, in the house.

Additionally, in the case at hand, petitioners never used the house as their personal residence before FCFRD destroyed

it while conducting its training exercises. *See* sec. 1.170A–7(b)(3), Income Tax Regs.; *see also Estate of Brock v. Commissioner*, 71 T.C. 901, 906–907 (1979), *aff'd*, 630 F.2d 368 (5th Cir. 1980).

We hold that petitioners did not contribute a remainder interest in a personal residence to FCFRD.

### 3. *Qualified Conservation Contribution*

A qualified conservation contribution is a contribution of a qualified real property interest to a qualified organization exclusively for conservation purposes. Sec. 170(h)(1). Section 170(h)(4)(A) generally provides that a contribution is for a conservation purpose if it: (1) preserves land for outdoor recreation by, or the education of, the general public, (2) protects a relatively natural habitat of fish, wildlife, or plants, or similar ecosystem, (3) preserves open space for the scenic enjoyment of the general public or pursuant to a Federal, State, or local governmental conservation policy, and this preservation will yield a significant public benefit, or (4) preserves a historically important land area or a certified historic structure. *See also* sec. 1.170A–14(d)(1), Income Tax Regs. A contribution of a qualified real property interest may be exclusively for conservation purposes only if it is protected in perpetuity. Sec. 170(h)(5)(A). We recognize that contribution of a taxpayer's house to a volunteer fire department for destruction by burning during training exercises provides valuable training experience for the volunteer firefighters that serves to further the protection of property. However, that is not a conservation purpose for purposes of section 170.

We hold that petitioners did not make a qualified conservation contribution to FCFRD.

### D. *Conclusion*

As with this case, taxpayers usually grant a fire department license to destroy a building on their land because they wish to have it removed from the land, either to increase the value of the land (*Scharf*) or so that they may construct a new building on the land (*Rolfs*). The Court of Appeals for the Seventh Circuit accurately described such donations as follows: "The taxpayers here gave away only the right to

come onto their property and demolish their house, a service for which they otherwise would have paid a substantial sum." *Rolfs v. Commissioner*, 668 F.3d at 895. The taxpayers retain all property rights appertaining to the building. *See id.* ("None of the value of the house, as a house, was actually given away."). Such taxpayers, including petitioners, give only the use of their property to the fire department.[21] Section 170(f) denies them a charitable contribution deduction for the contribution of the use of their property regardless of the value of that use or the fact that the value of the debris remaining after the training exercises was de minimis.[22] *Cf. Logan v. Commissioner*, T.C. Memo. 1994–445. We hold that petitioners are not entitled to any deduction for their granting FCFRD the right to conduct training exercises on the Vienna property and to destroy the house by burning during those exercises.

## II. *Accuracy-Related Penalties*

Respondent determined that petitioners are liable for an accuracy-related penalty under section 6662(a) and (b)(1) and (2) for negligence and substantial understatement of income tax. Under section 6664(c), however, generally no penalty is imposed under section 6662 with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith

---

[21] This is consistent with the following explanation in Fairfax County Fire and Rescue Acquired Structure Powerpoint published on the Internet at www.fairfaxcounty.gov/fr/academy/Acquired__Structure__Powerpoint.pdf, of which we take judicial notice:

When a property owner *loans* their property to the program for training, they are performing a valuable service to their community. * * *

Each property that is offered to the program must meet extensive requirements prior to acceptance and *utilization* (e.g. acquiring the appropriate permits, the structural stability assessment, asbestos free inspection, and confirmation that utilities have been disconnected).

For live burn training, *the structures are not completely burned to the ground and remain the responsibility of the property owner for demolition and removal*.

[Emphasis added.]

[22] In *Rolfs v. Commissioner*, 135 T.C. 471 (2010), *aff'd*, 668 F.3d 888 (7th Cir. 2012), we held that the taxpayers did not make a charitable contribution because they did not prove that the value of the house (taking into account the requirement that it be destroyed) exceeded the substantial benefit they received in the form of demolition services. In affirming this Court, the Court of Appeals opined: "Perhaps the best 'comparable sales' comparison might have been the price paid by the fire department to rent a burn tower for the length of time the department conducted exercises in and around the lake house, but there is no such evidence here." *Rolfs v. Commissioner*, 668 F.3d at 895. However, the Court of Appeals held that the taxpayers gave away only the right to come onto their property and demolish their house. *Id.* Where only the use of the taxpayers' property is donated, a charitable contribution deduction is denied by sec. 170(f)(3) and the value of the contribution is irrelevant.

with respect to such portion. The determination of whether a taxpayer acted with reasonable cause and in good faith "is made on a case-by-base basis, taking into account all pertinent facts and circumstances." Sec. 1.6664–4(b)(1), Income Tax Regs.

When petitioners filed their return, the legal issues raised by their charitable contribution deduction claim were not settled. Importantly, in *Scharf v. Commissioner*, T.C. Memo. 1973–265, this Court held that a charitable contribution deduction was available for the donation of a building to a volunteer fire department for demolition in firefighter training exercises. The donation in *Scharf* was made in 1967 before Congress amended section 170 to disallow a charitable contribution deduction for the contribution of a partial interest in property, and the standard applied in *Scharf* was subsequently superseded by the quid pro quo standard for charitable contribution deductions established by the Supreme Court in *Am. Bar Endowment*, 477 U.S. 105. No Federal court had reconsidered or questioned *Scharf* until 2010 when this Court issued *Rolfs v. Commissioner*, 135 T.C. 471, wherein we applied the quid pro quo standard.[23] In *Rolfs* we held the taxpayers had not made a charitable contribution because they received a substantial benefit in the form of demolition services, the value of which exceeded the value of the interest in the house donated. We did not decide whether section 170(f)(3) applied.

Given all the facts and circumstances, including the uncertain state of the law, we find that petitioners acted with reasonable cause and in good faith. Therefore, we hold that they are not liable for any penalty under section 6662.

Respondent is entitled to summary judgment only on the charitable contribution issue. We have ruled in petitioners' favor on the penalty issue, and there are no other issues to be decided in this case.

---

[23] We have found only two other cases involving the contribution of a building to a fire department for training purposes made after the amendment to sec. 170. In each case the taxpayers were not entitled to a deduction for the contribution regardless of whether the building was part of the land. In the first case, *Lawver v. Commissioner*, T.C. Memo. 1981–192, this Court held that the taxpayer was allowed a deduction for the loss on the building which precluded an additional deduction for the donation to the fire department. In *Hendrix v. United States*, 106 A.F.T.R.2d (RIA) 2010–5373, 2010–2 U.S. Tax Cas. (CCH) para. 50,541, 2010 WL 2900391 (S.D. Ohio 2010), the U.S. District Court for the Southern District of Ohio held that the taxpayers were not entitled to the deduction because they did not obtain a qualified appraisal and attach it to their tax return as required by sec. 170(f)(11)(C).

Accordingly,

>*An appropriate order will be issued, and*
>*decision will be entered under Rule 155.*

Reviewed by the Court.

COLVIN, COHEN, VASQUEZ, THORNTON, MARVEL, GUSTAFSON, and MORRISON, *JJ.*, agree with this opinion of the Court.

PARIS, *J.*, concurs in the result only.

KERRIGAN, *J.*, dissents.

———————————

APPENDIX A

The following cases show that fixtures are considered part of the land under the common law in all 50 States: *Sycamore Mgmt. Grp., LLC v. Coosa Cable Co., Inc.*, 42 So. 3d 90, 93 (Ala. 2010); *K & L Distribs., Inc. v. Kelly Elec., Inc.*, 908 P.2d 429, 432 (Alaska 1995); *Fish v. Valley Nat'l Bank of Phoenix*, 167 P.2d 107, 111 (Ariz. 1946); *Ozark v. Adams*, 83 S.W. 920, 921 (Ark. 1904); *R. Barcroft & Sons Co. v. Cullen*, 20 P.2d 665 (Cal. 1933); *Rare Metals Min. & Mill. Co. v. W. Colo. Power Co.*, 213 P. 124 (Colo. 1923); *Merritt-Chapman & Scott Corp. v. Mauro*, 368 A.2d 44, 47 (Conn. 1976); *Della Corp. v. Diamond*, 210 A.2d 847, 850 (Del. 1965); *Burbridge v. Therrell*, 148 So. 204, 206 (Fla. 1933); *Nat'l Cmty. Builders, Inc. v. Citizens & So. Nat'l Bank*, 207 S.E.2d 510, 512 (Ga. 1974); *Ahoi v. Pacheco*, 1914 WL 1743, at *1 (Haw. Terr. 1914); *Beeler v. C.C. Mercantile Co.*, 70 P. 943 (Idaho 1902); *White Way Elec. Sign & Maint. Co. v. Chi. Title & Trust Co.*, 14 N.E.2d 839, 841 (Ill. 1938); *State ex. rel. Green v. Gibson Circuit Court*, 206 N.E.2d 135, 138 (Ind. 1965); *Ford v. Venard*, 340 N.W.2d 270 (Iowa 1983); *Blankenship v. School Dist. No. 28 of Wyandotte Cnty.*, 15 P.2d 438, 439 (Kan. 1932); *Tarter v. Turpin*, 291 S.W.2d 547 (Ky. 1956); *Prevot v. Courtney*, 129 So.2d 1, 3 (La. 1961); *Searle v. Town of Bucksport*, 3 A.3d 390, 396 (Me. 2010); *Supervisor of Assessments of Anne Arundel Cnty. v. Hartge Yacht Yard, Inc.*, 842 A.2d 732, 738 (Md. 2004); *Meeker v. Oszust*, 30 N.E.2d 246 (Mass. 1940); *Sequist v. Fabiano*, 265 N.W. 488 (Mich. 1936); *Merch. Nat'l Bank of Crookston v. Stanton*, 56 N.W. 821, 822

(Minn. 1893); *Connolly v. McLeod*, 52 So. 2d 473, 476 (Miss. 1951); *Marsh v. Spradling*, 537 S.W.2d 402, 404 (Mo. 1976); *Grinde v. Tindall*, 562 P.2d 818 (Mont. 1977); *Fuel Exploration, Inc. v. Novotny*, 374 N.W.2d 838, 842 (Neb. 1985); *Flyge v. Flynn*, 166 P.2d 539, 552 (Nev. 1946); *New England Tel. & Tel. Co. v. City of Franklin*, 685 A.2d 913 (N.H. 1996); *Gen. Motors Corp. v. City of Linden*, 696 A.2d 683 (N.J. 1997); *Garrison Gen. Tire Serv., Inc. v. Montgomery*, 404 P.2d 143 (N.M. 1965); *Marraro v. State*, 189 N.E.2d 606, 610 (N.Y. 1963); *Lee-Moore Oil Co. v. Cleary*, 245 S.E.2d 720, 722 (N.C. 1978); *Strobel v. Northwest G. F. Mut. Ins. Co.*, 152 N.W.2d 794, 796 (N.D. 1967); *Masheter v. Boehm*, 307 N.E.2d 533 (Ohio 1974); *Akers v. Hintergardt*, 203 P.2d 883, 884 (Okla. 1949); *First State & Sav. Bank v. Oliver*, 198 P. 920 (Or. 1921); *First Nat'l Bank of Mount Carmel v. Reichneder*, 91 A.2d 277, 280 (Pa. 1952); *Butler v. Butler's Diner, Inc.*, 98 A.2d 875, 876 (R.I. 1953); *Carroll v. Britt*, 86 S.E.2d 612 (S.C. 1955); *Killian v. Hubbard*, 9 N.W.2d 700 (S.D. 1943); *Knoxville Gas Co. v. W. I. Kirby & Sons*, 32 S.W.2d 1054 (Tenn. 1930); *O'Neil v. Quilter*, 234 S.W. 528 (Tex. 1921); *Couch v. Welsh*, 66 P. 600 (Utah 1901); *Sherburne Corp. v. Town of Sherburne*, 207 A.2d 125, 127 (Vt. 1965); *Island Cnty. v. Dillingham Dev. Co.*, 662 P.2d 32 (Wash. 1983); *Ohio Cellular RSA Ltd. P'ship v. Bd. of Pub. Works of State of W. Va.*, 481 S.E.2d 722, 727 (W. Va. 1996); *Milburn By-Prod. Coal Co. v. Eagle Land Co.*, 93 S.E.2d 231 (W. Va. 1956); *Premonstratensian Fathers v. Badger Mut. Ins. Co.*, 175 N.W.2d 237 (Wis. 1970); *Wyo. State Farm Loan Board v. FCSCC*, 759 P.2d 1230 (Wyo. 1988).

## APPENDIX B

The following cases indicate that, consistent with the common law in Virginia as set forth in *Bunn v. Offutt*, 222 S.E.2d 522 (Va. 1976), a license does not convey an interest in the property under the common law in the 49 remaining States (listed alphabetically) and the District of Columbia: *Davis v. Miller Brent Lumber Co.*, 44 So. 639 (Ala. 1907); *Laverty v. Alaska R.R. Corp.* 13 P.3d 725, 735 (Alaska 2000); *Charlebois v. Renaud*, 300 P. 190 (Ariz. 1931); *Harbottle v. Cent. Coal & Coke Co.*, 203 S.W. 1044 (Ark. 1918); *Beckett v. City of Paris Dry Goods Co.*, 96 P.2d 122 (Cal. 1939); *Radke*

*v. Union Pac. R. Co.*, 334 P.2d 1077 (Colo. 1959); *Bland v. Bregman*, 192 A. 703, 705 (Conn. 1937); *Timmons v. Cropper*, 172 A.2d 757 (Del. Ch. 1961); *Burdine v. Sewell*, 109 So. 648 (Fla. 1926); *Henson v. Airways Serv., Inc.*, 136 S.E.2d 747 (Ga. 1964); *Kiehm v. Adams*, 126 P.3d 339 (Haw. 2005); *Shultz v. Atkins*, 554 P.2d 948 (Idaho 1976); *Cook v. Univ. Plaza*, 427 N.E.2d 405 (Ill. App. Ct. 1981) (citing *Holladay v. Chi. Arc Light & Power Co.*, 55 Ill. App. 463 (1st Dist. 1894)); *One Dupont Centre, LLC v. Dupont Auburn, LLC*, 819 N.E.2d 507, 513–514 (Ind. Ct. App. 2004); *Baker v. Kenney*, 124 N.W. 901 (Iowa 1910); *Denver Nat'l Bank of Denver, Colo. v. State Comm'n of Revenue*, 272 P.2d 1070 (Kan. 1954); *Polley v. Ford*, 227 S.W. 1007 (Ky. 1921); *Blackshear v. Hood*, 45 So. 957 (La. 1908); *Benham v. Morton & Furbish Agency*, 929 A.2d 471, 475 (Me. 2007); *Condry v. Laurie*, 41 A.2d 66 (Md. 1945); *Baseball Publ'g Co. v. Bruton*, 18 N.E.2d 362 (Mass. 1938); *Kitchen v. Kitchen*, 641 N.W.2d 245, 249 (Mich. 2002); *Hotel Markham v. Patterson*, 32 So. 2d 255 (Miss. 1947); *Kuhlman v. Stewart*, 221 S.W. 31 (Mo. 1920); *Johnson v. Skillman*, 12 N.W. 149 (Minn. 1882); *Herigstad v. Hardrock Oil Co.*, 52 P.2d 171 (Mont. 1935); *Brown Cnty. Agric. Soc'y, Inc. v. Brown Cnty. Bd. of Equalization*, 660 N.W.2d 518 (Neb. App. Ct. 2003); *Paul v. Cragna*, 59 P. 857 (Nev. 1900); *Houston v. Laffee*, 46 N.H. 505, 1866 WL 1951 (1866); *Mandia v. Applegate*, 708 A.2d 1211 (N.J. Super. Ct. App. Div. 1998); *Bd. of Cnty. Comm'rs of Dona Ana Cnty. v. Sykes*, 394 P.2d 278 (N.M. 1964); *Cahoon v. Bayard*, 25 N.E. 376 (N.Y. 1890); *Moon v. Central Builders, Inc.*, 310 S.E.2d 390 (N.C. Ct. App. 1984); *Lee v. N.D. Park Serv.*, 262 N.W.2d 467 (N.D. 1977); *Rodefer v. Pittsburg, O. V. & C. R.R. Co.*, 74 N.E. 183, 185–186 (Ohio 1905); *McKenna v. Williams*, 167 P.2d 368, 370 (Okla. 1946); *McCarthy v. Kiernan*, 245 P. 727 (Or. 1926); *Baldwin v. Taylor*, 31 A. 250 (Pa. 1895); *Fish v. Capwell*, 29 A. 840 (R.I. 1894); *Briarcliffe Acres v. Briarcliffe Realty Co.*, 206 S.E.2d 886 (S.C. 1974); *Polk v. Carney*, 112 N.W. 147 (S.D. 1907); *Harris v. Miller*, 19 Tenn. 158, 1838 WL 1108 (Tenn. 1838); *Settegast v. Foley Bros. Dry Goods Co.*, 270 S.W. 1014, 1016 (Tex. 1925); *Kennedy v. Combined Metals Reduction Co.*, 51 P.2d 1064 (Utah 1935); *Price v. Rowell*, 159 A.2d 622 (Vt. 1960); *Bakke v. Columbia Valley Lumber Co.*, 298 P.2d 849 (Wash. 1956); *Campbell Brown & Co. v. Elkins*, 93 S.E.2d 248 (W. Va. 1956); *French v. Owen*,

2 Wis. 250, 1853 WL 1760 (Wis. 1853); *Seven Lakes Dev. Co., L.L.C. v. Maxson*, 144 P.3d 1239 (Wyo. 2006); *Jackson v. Emmons*, 19 App. D.C. 250, 254, 1902 WL 19620 (D.C. 1902).

––––––––––––––––––

GALE, *J*., dissenting: The opinion of the Court holds that petitioners' grant of permission to the local fire department to destroy the house on their property merely granted a license to use the house, making it a contribution of less than their entire interest in the house, disallowed under section 170(f)(3) because it did not constitute a contribution of an undivided portion of their entire interest in the property as provided in section 170(f)(3)(B)(ii). I disagree. Petitioners' grant of permission to destroy conveyed more than a license to use the house. When an owner of property grants a license for its use, that grant necessarily includes the premise that the property will be returned to the owner when the licensed use terminates, subject to ordinary wear and tear. Permission to destroy eliminates that premise, and upon destruction the property interests formerly held by the owner are transferred to the licensee with such permission.

Here, the fire department's destruction of the house severed it from the land (as the opinion of the Court concedes, *see* op. Ct. p. 413) pursuant to petitioners' written permission and thus rendered the structure personal property. *See* 2 Tiffany Real Property sec. 623 (3d ed. 1939) (actual severance of a fixture from land converts it to personal property if the owner intends the severance to be permanent). Petitioners ceded every substantial interest they held in that personal property and at best retained only insubstantial interests (such as ownership of the postburn debris). They did not expect the structure to be returned to them, and it was not. As it was tangible personal property, all of petitioners' substantial property interests in the structure were consumed by the fire department when it destroyed the structure in furtherance of its training objectives.

An exception to disallowance under section 170(f)(3) is made where the taxpayer makes a contribution of an undivided portion of his entire interest in property. The regulations interpret an undivided portion of a donor's entire interest as follows:

An undivided portion of a donor's entire interest in property must consist of a fraction or percentage of each and every *substantial* interest or right owned by the donor in such property and must extend over the entire term of the donor's interest in such property and in other property into which such property is converted. * * * [Sec. 1.170A–7(b)(1)(i), Income Tax Regs.; emphasis added.]

We have interpreted this "insubstantiality rule" in the regulations as permitting the retention by the donor of insubstantial interests in the donated property without triggering a disallowance of his deduction under section 170(f)(3). *Stark v. Commissioner*, 86 T.C. 243, 252 (1986). In *Stark* we held that section 170(f)(3) was not triggered even though the donor of land retained the interest in all minerals and the right to mine for them, subject to certain U.S. Forest Service regulations. We reasoned that the mineral interest as so restricted was so insubstantial that the donor had "in substance" transferred his entire interest in the land for purposes of section 170(f)(3). *Id.* at 252–253. The mineral interest retained by the donor was not a "'substantial interest or right'" within the meaning of section 1.170A–7(b)(1)(i), Income Tax Regs., we concluded. *Id.* at 255; *see also* Rev. Rul. 75–66, 1975–1 C.B. 85, 86 (retention of right to train hunting dogs and maintain trails for that purpose on donated land "not substantial enough to affect the deductibility of the property contributed").

Once the fire department destroyed the structure as contemplated, petitioners retained no substantial interest in it that would trigger the section 170(f)(3) limitation on their charitable contribution deduction. [1] Under Virginia property law (as discussed more fully below), petitioners' written permission to enter their land and destroy the house conveyed to the fire department a property interest in the structure, effective upon its severance via demolition. The opinion of the Court contends that petitioners nonetheless retained a substantial property interest in the house after its destruction, arguing that a property interest includes not only the

---

[1] The opinion of the Court appears to suggest that petitioners' donation to the fire department was of a partial interest in property for purposes of sec. 170(f)(3) because the fire department did not receive the right "to sell the building with all the rights attached thereto". *See* op. Ct. p. 410. However the mere fact that a donee does not receive the donor's unrestricted fee simple interest in the donated property but instead receives it encumbered with restrictions does not trigger sec. 170(f)(3). *See, e.g.*, Rev. Rul. 85–99, 1985–2 C.B. 83; G.C.M. 39380 (July 9, 1985) (sec. 170(f)(3) not triggered where donor with fee simple interest in land donates it with condition that it be used only for agricultural purposes).

benefits of ownership but also its burdens. The opinion of the Court reasons that the structure's postdemolition remnants imposed significant burdens on petitioners, such as responsibility for clearing debris and liability for injury from hazardous conditions created by the remnants. Petitioners shoulder the liability for such hazardous conditions, however, as owners of the land from which the house was severed. All substantial property interests of an owner in his structure are eliminated when the structure is demolished.

The contention of the opinion of the Court that petitioners merely gave a license also does not account fully for applicable Virginia property law. The opinion of the Court contends that petitioners never transferred any property interest in the house to the fire department but instead granted only a revocable license to use it. The opinion of the Court cites *Bostic v. Bostic*, 99 S.E.2d 591 (Va. 1957), and *Young v. Young*, 63 S.E. 748 (Va. 1909), in an effort to show that under Virginia property law petitioners' grant of permission to destroy the house would be construed as a mere license to use that did not convey any property interest in the house. In *Bostic*, the Virginia Supreme Court of Appeals held that a grant of the right to enter and take minerals is a mere license that creates no property interest in the minerals *until they are separated from the land*. *Bostic*, 99 S.E.2d at 594–595. *Young* cites a similar principle with respect to timber; namely, a license to cut and sell timber conveys no property interest in the timber until it is cut, i.e., severed from the land. *Young*, 63 S.E. at 749; *see also* Minor on Real Property, 2d ed., sec. 51 ("the grant of * * * [a] license * * * under which the grantee is entitled to mine the ore, stone, etc., and remove it * * * [gives the grantee] no interest in the land or in any ore save that actually mined"), *cited with approval in Bostic*, 99 S.E.2d at 594.

Virginia has by statute modified the common law of property with respect to structures to be removed from realty, adopting the Uniform Commercial Code provision that deems a contract for the sale of such a structure to be one for the sale of goods where the structure is to be severed by the seller. *See* Va. Code Ann. sec. 8.2–107(1) (2001). (If the buyer is to sever, the contract remains one for the sale of land. *See*

U.C.C. sec. 2–107(1) cmt. 1. [2]) Notably, however, the Virginia statute (consistent with the Uniform Commercial Code) provides that while a contract for the sale of a structure to be severed by the seller is one for goods, "until severance a purported present sale * * * [of the structure] which is not effective as a transfer of an interest in land is effective only as a contract to sell." Va. Code Ann. sec. 8.2–107(1). Conversely, once severance has occurred, the structure constitutes goods, the sale of which is governed by statute and need not be effective as a transfer of an interest in land. In short, actual severance converts the structure from an interest in land to personal property.

On the basis of *Bostic* and *Young* the opinion of the Court concludes that petitioners' grant to the fire department of the right to destroy the house conveys no property interest but only a license. Because such a license did not convey a property interest, the opinion of the Court argues, it did not constructively sever the house from the land. But the opinion of the Court ignores the second prong of the principle in *Bostic* and *Young* and the Virginia statute governing structures to be severed from land: severance effects a change in property interests. While the grant of permission to mine or cut conveys no property interest, such an interest *does* transfer to the licensee when he mines the ore or cuts the timber—that is, when severance occurs—according to both cases. The same is true under Virginia statutory law for a structure that is to be severed from land. Once severed, the structure constitutes goods that need not be conveyed as an interest in land.

While the opinion of the Court concedes that the destruction of the house severed it from the land (which rendered it personalty), the opinion of the Court does not consider whether this severance itself effected a transfer of property interests analogous to the transfer of an interest in ore or timber that occurs when the licensee severs either pursuant to his license. However, by virtue of the fire department's severance and destruction of the house, petitioners in substance ceded all substantial property interests they held in the structure to the department. Once severed, the structure

---

[2] The Virginia Supreme Court of Appeals has noted that the Official Comments concerning the Uniform Commercial Code "are frequently helpful in discerning legislative intent". *Leake v. Meredith*, 267 S.E.2d 93, 95 (Va. 1980).

was personal property. Petitioners retained no substantial interest in that personal property; they were left only with the debris into which it was converted.

Petitioners gave more than the use of their house and retained no substantial interest therein by virtue of their grant of permission to destroy. "Where the interest retained by the taxpayer is so insubstantial that he has, in substance, transferred his entire interest in the property, the tax treatment should so reflect. Such a taxpayer satisfies the original congressional purpose behind section 170(f)(3)". *Stark v. Commissioner*, 86 T.C. at 252. As in *Stark*, petitioners' retention of an interest in the charred debris into which the structure was converted was not a "substantial interest or right" within the meaning of section 1.170A–7(b)(1)(i), Income Tax Regs. Because petitioners in substance transferred their entire interest in the house, section 170(f)(3) does not limit their deduction and provides no basis for an award of summary judgment to respondent in this case.

While section 170(f)(3) does not bar petitioners' charitable contribution deduction, it must still satisfy the "sine qua non of a charitable contribution"; namely, a transfer of money or property without adequate consideration in return. *United States v. Am. Bar Endowment*, 477 U.S. 105, 118 (1986); *Rolfs v. Commissioner*, 668 F.3d 888 (7th Cir. 2012), *aff'g* 135 T.C. 471 (2010). Petitioners must show that the value of the house, taking into account the conditions on its donation, exceeded the value of the benefit they received from the fire department in the form of demolition services. *See Rolfs v. Commissioner*, 668 F.3d at 892. I would deny the motion for summary judgment and, if petitioners wished, proceed to trial on that question of fact.

HALPERN, FOLEY, GOEKE, WHERRY, KROUPA, and HOLMES, *JJ.*, agree with this dissent.