HOUSTON. *v.* LAFFEE.

A parol license to do a certain act or series or succession of acts on the land of another, does not convey any interest in the land, but simply a privilege to be exercised upon the land, and hence the statute of frauds does not apply to such license.

But such a license is in all cases revocable, so far as it remains unexecuted, or so far as any future enjoyment of the easement is concerned, at the will of the licensor, even where the licensee has made an expenditure of money upon the land of the licensor upon the faith of such license.

In an action of trespass for cutting off lead pipe which the plaintiff had laid upon the land of defendant under a parol license, for the purpose of conveying water to the plaintiff's house, plaintiff cannot recover the money expended in digging or deepening the well or purchasing and laying the pipe, or any consequential damage suffered at his house or stable in consequence of the stopping of the water at that particular time. He can only recover for the actual injury to the pipe and possibly exemplary damages, if the act was unnecessary and malicious.

THE case was referred, and the referee's report was in substance as follows:

The plaintiff's action is trespass. His writ is dated January 22, 1864. The plaintiff alleges, in his declaration, that defendant at Enfield, on the 10th day of March, 1863, with force and arms then and there cut off and destroyed plaintiff's lead pipe of the value of $40.00, then and there being used for the purpose of conveying water to plaintiff's house and stable, by reason of which, plaintiff has been deprived of the use of water for the purpose aforesaid, from said 10th day of March to the

day of the date of plaintiff's writ, all of which is against the peace, &c. Plea, general issue.

Plaintiff's house and stable were situate a few rods northerly of North Enfield depot. Defendant's land extends up the track of the Northern Railroad, on the west of said track and adjoining the same for some distance, being fourteen acres more or less, adjoining also Mascoma river and lake. In 1854, one Lewis Stevens owned defendant's land, and the plaintiff, by virtue of the verbal license of said Stevens, and with his knowledge laid down upon the land of said Stevens. a lead aqueduct from a spring on the premises and near the bank of Mascoma river, thence to plaintiff's buildings. The whole distance from plaintiff's buildings to said spring, was 23 rods. A half inch lead pipe was used by plaintiff at the expense of about $31.00. In August, 1855, the defendant purchased the aforesaid premises, and there was no mention made of plaintiff's aqueduct in Stevens' deed to defendant. The plaintiff continued to use the water of said spring, without objection on the part of Laffee, after his purchase. In 1858, at the time of a freshet in Mascoma river, the water undermined the bank where the stream was, and rendered the spring useless to the occupant. Plaintiff went to the defendant, and after some previous discussion, it was agreed that plaintiff might dig a well a few rods southerly of the old spring, upon the defendant's land. Plaintiff with defendant's knowledge and consent did dig a well about twelve feet deep, and stoned it and put a platform upon it, under the agreement that the plaintiff should put his lead pipe in connection with it, and also that defendant should have the right to put a pump into said well, and use from it sufficient water to supply his own family, the defendant having previously erected his shanty a short distance from the place where the well was dug. The plaintiff found water, put his lead pipe in connection therewith, and continued to use it without objection on the part of defendant. The defendant also used the water for family use by means of a rope and pail, but did not put in his pump according to the understanding of the parties. Plaintiff shew that in this job he expended $27.25. In 1860, it was found the well was not deep enough, the well getting dry in times of drouth. The parties met and mutually agreed to sink it deeper. Plaintiff was to furnish the labor of two or three men, and defendant was to work with them. Plaintiff employed Coburn to go on and sink it deep enough, and he proceeded to execute the work, defendant working some also. They sunk the well seventeen feet deep, stoned it up and put on the platform again. Had the stones from defendant's land principally. After the work was finished, plaintiff continued to use the water as before without complaint. The money paid out by plaintiff for deepening the well was $11.50. About the 10th of March, A. D. 1863, the defendant taking some offense, without previous notice of his purpose, forcibly cut off plaintiff's lead pipe, and prevented him from the further enjoyment of the well, forbidding him also against coming upon his land to take up his pipe, or for any purpose. Plaintiff owned a livery stable with twelve horses, and correspondent equipage. He was put to extra trouble and expense in procuring water for his stable and house, in con-

sequence of defendant's acts from said 10th of March, and up to the date of plaintiff's writ.

Upon the whole evidence, plaintiff claimed that he could maintain this action, and obtain damages for the wrongful acts of defendant for cutting off his pipe, and depriving him of the use of water on defendant's lands, and that the license was irrevocable and binding upon defendant; while defendant contended that this action could not be maintained, that if any could be maintained, it should be case, and that the license was revocable, and that the defendant exercised the rights given him by the law, in rescinding the license, and under the circumstances was justified, and was not bound in any form to indemnify the plaintiff for his labor and improvements upon his land.

The referee reported that if the plaintiff could recover for all his damages, he would be entitled to the sum of $35.00 and costs. If he could not upon the above facts maintain his action, that defendant recover his costs.

*Murray*, for plaintiff.

*Blodgett*, for defendant.

Sargent, J. It has been repeatedly held in this State that a parol license to do a certain act or a series or succession of acts on the land of another, does not convey any interest in the land, but simply a privilege to be exercised upon the land, and hence that the statute of frauds does not apply to such license; and that such license is a sufficient justification to the licensee for entering upon the land of the licensor to do the act or acts thus licensed, until it is revoked. So far the authorities seem to be uniform.

It has also been held, that, where a license, like the one in this case, had been given to the plaintiff to enter upon the plaintiff's land, and do acts which involved an expenditure of money, and the license becomes executed by an expenditure incurred, it is either irrevocable, or cannot be revoked without remuneration, on the ground that a revocation under such circumstances, without remuneration, would be fraudulent and unconscionable. *Harris* v. *Dillingham*, 6 N. H. 9; *Putney* v. *Day*, 6 N. H. 430; *Woodbury* v. *Parshley*, 7 N. H. 237; *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. 102; *Sampson* v. *Burnside*, 13 N. H. 264; *Carleton* v. *Redington*, 21 N. H. 291; *Cowles* v. *Kidder*, 24 N. H. 364; *Miller* v. *Tobie*, 41 N. H. 86.

But we think the more recent decisions, however, sustain the doctrine that the license is in all cases revocable, so far as it remains unexecuted, or so far as any future enjoyment of the easement is concerned. *Carleton* v. *Redington, supra; Ruggles* v. *Lesure*, 24 Pick. 187; *Stevens* v. *Stevens*, 11 Met. 251; *Marston* v. *Gale*, 24 N. H. 176; in which last case it is said, that, "to hold otherwise would be giving to a parol license the force of a conveyance of a permanent easement in real estate. Such a doctrine cannot be sustained. No such right or interest in real estate can be created by parol." See, also, upon this point, *Hall* v.

*Chaffee,* 13 Vt. 150; *Prince* v. *Case,* 10 Conn. 375, where it is held that when such license is given by parol, and not in writing, it is countermandable at will, even when executed, so as to make any further enjoyment of the easement a ground of action, and that in such cases where money has been expended upon the faith of such license, so that the parties cannot now be placed in *statu quo,* a court of equity would grant relief as in any other case of part performance of a parol contract for the sale of land or any interest therein, upon the ground of preventing fraud.  Angell on Water-courses, 326, 359; *Morse* v. *Copeland,* 2 Gray 302; *Foot* v. *The New Haven &c. Co.,* 23 Conn. 214, 223; *Mumford* v. *Whitney,* 15 Wend. 380; *Wood* v. *Leadbitter,* 13 M. & W. 838; *Wood* v. *Manley,* 11 Adol. & E. 34.

These cases all hold that a mere license is revocable at any time, so far as any further enjoyment of the easement is concerned, at the will of the licensor, but they may not all agree as to the form of the remedy which the licensee should pursue to recover back the money he has expended; some holding that it may be done in an action at law for breach of contract, others that it must be in equity by compelling specific performance.

But it does not become necessary to consider that question here.  It would seem clear, that, in this action of trespass, the plaintiff cannot recover the money he had expended in digging or deepening the well, or purchasing and laying his pipe, or the consequential damages he may have suffered in his stable in consequence of the stopping of the water at that particular time.  Whatever other remedies the plaintiff may have to recover back his money expended, or his damages received, we think he cannot recover on those grounds in this action.  So that if the plaintiff can recover at all in this action, he is not entitled evidently to the amount allowed him by the referee.

Can the plaintiff recover at all in this action?  The lead pipe remained the property of the plaintiff though in defendant's land, and he could have maintained trespass against a stranger who had no interest in or right to either the pipe or the lands, if he had cut it off.  But the defendant had the right to revoke his license in a way that should be effectual, and, if the cutting off of the pipe was done simply for the purpose of putting an end to the license, of revoking it, and without any malice, or intentional wrong, we think the defendant would not be liable in this action; but if he cut the pipe wantonly, unnecessarily, and maliciously, and with a view to injure the pipe or to injure the plaintiff we think he would be liable.

But in any case, we cannot see that he would be liable for anything more than the actual injury to the pipe, unless he might possibly be liable for exemplary damages; but, as the case stands, we think there is nothing to show that he is liable at all.  The referee can probably find that fact and state it clearly from the evidence; and for that purpose, and for assessing the damages according to these suggestions,

*The report is recommitted.*