NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2018-0327

JAMES BOYLE, INDIVIDUALLY AND AS TRUSTEE OF THE 150 GREENLEAF AVENUE REALTY TRUST

v.

CITY OF PORTSMOUTH & a.

Argued: September 25, 2019
Opinion Issued: January 24, 2020

Law Offices of John Kuzinevich, of Duxbury, Massachusetts (John Kuzinevich on the brief and orally), and Devine, Millimet & Branch, P.A., of Manchester (Joshua Wyatt and David P. Eby on the brief), for the plaintiff.

Gallagher, Callahan & Gartrell, P.C., of Concord (Charles P. Bauer and Robert J. Dietel on the brief), and McLane Middleton, P.A., of Manchester (Bruce W. Felmly and Benjamin B. Folsom on the brief, and Mr. Felmly orally), for the defendant.

Gordon J. MacDonald, attorney general (Christopher G. Aslin, senior assistant attorney general, on the memorandum of law and orally), for the State.

DONOVAN, J.  The plaintiff, James Boyle, individually and as Trustee of the 150 Greenleaf Avenue Realty Trust, appeals, and the defendant, City of Portsmouth (City), cross-appeals, following a trial in the Superior Court (Delker, J.) in which the jury awarded damages to Boyle for trespass and nuisance arising from the City's sewer line on his property.

On appeal, Boyle contends that the trial court erred in: (1) determining as a matter of law that the City's trespass began in 2013; and (2) excluding all evidence of future lost profits after 2016.  The City asserts that the trial court erred in: (1) permitting Boyle's lost profits claims to go to the jury and refusing to set aside the jury's award; and (2) determining that the City did not have permanent rights in the sewer line.  We affirm the trial court's ruling that the City had only a revocable license in the sewer line, reverse, in part, the court's rulings concerning the timing of Boyle's damages, reverse the court's ruling on Boyle's lost profits claim and vacate the jury award, and remand.

## I.  Factual and Procedural Background

The trial court found, or the record supports, the following facts.  In 1967, the State owned the property at issue upon which the New Hampshire Board of Education (Board) had constructed a vocational school.  On November 20, 1967, the Board approved "the request by the Department of Public Works of the City of Portsmouth to extend a sewer line across the rear of the property of the Vocational-Technical Institute in Portsmouth."  The State thereafter sold the property on February 18, 1983, to three New Hampshire residents as tenants-in-common.  On October 21, 1988, the tenants-in-common conveyed the property to MSM Brothers, Inc. (MSM), and on December 30, 2003, MSM conveyed the property to Boyle.  In 2004, Boyle discovered the sewer line when he sought to develop the property to add an automobile dealership next to his existing dealership, Toyota of Portsmouth.  Shortly after this discovery, Boyle contacted the City's attorney and granted the City permission to keep the sewer line on his property as the parties attempted to resolve the issue.

In 2010, Boyle sued the City, alleging, among other things, trespass "as a result of the presence of the sewer line," and nuisance from the "accumulation of water" due to the improper maintenance of the sewer line.  In 2013, the parties cross-moved for summary judgment.  In its orders, the trial court determined with respect to the trespass claim that: (1) the City does not have an easement in the sewer line by estoppel, ratification, or prescription; (2) the City obtained only a revocable license to install and maintain the sewer line; (3) as of November 12, 2013, Boyle "unequivocally" revoked the license; (4) the sewer line is trespassing on Boyle's property; (5) the City must "either remove the sewer line or obtain easement rights by eminent domain within a reasonable time"; (6) the "equities of the present case do not justify" compensating the City for the cost of removing the sewer line; (7) the City must provide reasonable compensation to Boyle from November 12, 2013, "until the

line is removed or easement rights are acquired"; and (8) the amount of damages is subject to jury trial.

A ten-day jury trial was held in early 2017 on damages for the trespassing sewer line and on liability and damages for nuisance caused by water impounded by the sewer line. The jury found that Boyle was entitled to lost profits for the trespass, that the City created a nuisance due to water on the property, and that Boyle was also entitled to recover lost profits as a result of the nuisance. Boyle was awarded $3,570,000 in damages. The trial court denied the parties' post-trial motions, and this appeal and cross-appeal followed.

## II. Analysis

### A. The Sewer Line

We first address the City's argument that the trial court erred in determining that it does not have permanent rights in the sewer line. Acknowledging that it does not have a recorded easement, the City contends that it "proved that it has a prescriptive easement" and that it "demonstrated that it met the criteria for an irrevocable license." Boyle counters that "the only evidence in the record" is that the City had permission for the sewer line from all owners prior to him and, therefore, there "is no evidence [the City] made adverse claims." Further, he argues that irrevocable licenses "are not recognized under New Hampshire law" and that, at most, the City obtained a revocable license from the Board.

In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. See Conant v. O'Meara, 167 N.H. 644, 648 (2015). We review the trial court's application of the law to the facts de novo. Id.

#### 1. Prescriptive Easement

To establish an easement by prescription, the claimant must prove, by a preponderance of the evidence, twenty years of adverse, continuous, and uninterrupted use of the land. See Marshall v. Burke, 162 N.H. 560, 564 n.3 (2011); Burke v. Pierro, 159 N.H. 504, 512 (2009) (the adverse, continuous, and uninterrupted use of the land must be such "so as to give notice to the owner that an adverse claim was being made to it" (quotation and brackets omitted)). When use of another's land begins with permission, it cannot become adverse in nature without an explicit repudiation of the earlier permission. See Taylor v. Gerrish, 59 N.H. 569, 571 (1880). The character of

3

the use is a question of fact and the burden of proof remains on the claimant. Gowen v. Swain, 90 N.H. 383, 385-86 (1939).

The City asserts that the trial court erroneously determined that the prescriptive period did not begin to run until October 21, 1988, when the State's grantees — the tenants-in-common — conveyed the property to MSM. The City argues that the court "misinterpreted RSA 539:6, which prevents adverse possession as to State-owned lands," as providing that the prescriptive period "would not run during the times both that the State and the State's initial grantees" owned the property. According to the City, "[p]roperly construed, the statute prohibits adverse possession from accruing against the land while it is owned by the State," but does not "preclude adverse possession from running on land once it is privately owned." Therefore, the City asserts, "the prescriptive period started to run on February 18, 1983" and "ripened twenty years later on February 18, 2003, well before Boyle's purchase in December 2003." Even assuming, without deciding, that the City's interpretation of the statute is correct, there is no evidence in the record that the City's use of the land was anything other than permissive until Boyle revoked permission.

The City also argues that when the trial court found on reconsideration of its initial summary judgment order that the City has only a revocable license, it then erroneously "failed to reconsider how that . . . impacted the permissive-versus-adverse aspect of" the City's use of the sewer line. The City asserts that as a matter of law the trial court "should have determined, in light of its new ruling, that the license was revoked by the conveyance of the Property from the State to [the tenants-in-common] and the period for establishing prescriptive rights was running." However, the burden was on the City to prove by the balance of probabilities twenty years of adverse, continuous, uninterrupted use of the land claimed "in such a manner as to give notice to the record owner that an adverse claim was being made to it." Ucietowski v. Novak, 102 N.H. 140, 144 (1959). Again, there is no evidence that the City's use of the sewer line was anything but permissive until Boyle revoked permission. See Taylor, 59 N.H. at 571 (the use having been commenced under a license, "if the defendants . . . would have had their use[ ] adverse, they should have done some unequivocal act showing such intention"). Accordingly, we affirm the trial court's determination that the City does not have an easement by prescription.

2. Irrevocable License

The City argued in its motion for summary judgment that its license became irrevocable upon its expenditure of funds to install the sewer line. The trial court noted that "[e]arly New Hampshire case law recognized that licenses could become irrevocable even if they were orally given as long as they were executed, meaning the licensee detrimentally relied on the permission and

4

expended resources in that reliance." However, as the trial court stated, that early case law was overruled by Houston v. Laffee, which held that a parol license could never become an easement because it does not comply with the Statute of Frauds. See Houston v. Laffee, 46 N.H. 505, 507-08 (1866). The Houston Court reasoned that to hold otherwise "would be giving to a parol license the force of a conveyance of a permanent easement in real estate." Id. at 507.

On appeal, the City argues that, "to the extent an irrevocable license is inconsistent with this Court's case law from the 19th Century, it is time to revisit the issue" to avoid the "severe damage and unfair impacts by rigid adherence to the position enunciated in Houston v. Laffee." Citing case law from other jurisdictions, the City contends that we should "hold that a license for the use of land may become irrevocable when a licensee has expended substantial resources in reliance on the license and when required to prevent injustice."

We interpret the City's argument as a request that we overrule Houston. "The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." Jacobs v. Director, N.H. Div. of Motor Vehicles, 149 N.H. 502, 504 (2003) (quotation omitted). "Thus, when asked to reconsider a holding, the question is not whether we would decide the issue differently de novo, but whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed." Id. at 504-05 (quotation omitted). Several factors inform our judgment, including: (1) whether the rule has proven to be intolerable simply in defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. Id. at 505.

The City does not address any of these factors, but simply claims that the law is unfair in this case. In the absence of developed argument, we decline the City's request that we "revisit" Houston. Accordingly, we affirm the trial court's determination that "[a]bsent a writing that satisfied the Statute of Frauds," the City "only obtained a revocable license to use the vocational school land to erect a sewer line."

B. Damages

Next, we consider the parties' arguments concerning damages. Boyle asserts that the trial court erred in determining that he revoked the City's

5

license in 2013, thereby precluding evidence of damages prior to that date. He also argues that the court erred in precluding damages after 2016. The City asserts that the court erred in allowing Boyle's lost profits claims to go to the jury and in refusing to set aside or remit the jury's award.

### 1. Revocation of the City's License

On February 7, 2008, Boyle's attorney sent a letter to the City's attorney challenging the City's "right to have multiple sewer lines on the property without an easement," expressing his belief that there is no "justification for the continued presence of the sewer lines," and demanding that "the City immediately remove the sewer lines from the property." The letter stated further that, "[s]ince the City has no easement, or permission from the current owner as it had in the past, . . . it is [Boyle's] intent to erect suitable barriers to prevent unauthorized access." Boyle asserted in his cross-motion for summary judgment that the 2008 letter constituted a "formal demand" to the City that he wanted the sewer line removed from his property. The trial court found, however, that because Boyle had granted permission in 2004 for the sewer line to remain on his property pending the outcome of the litigation, there was no trespass.

On November 12, 2013, Boyle sent a letter to the Mayor and City Council of Portsmouth stating that he "hereby revoke[s] any license for the continued use or presence of the sewer line from today and through the future" and he demanded that the City "immediately remove it, failing of which, [he] shall take steps to have it removed as allowed by law." The letter further stated that "[n]othing in this letter is with prejudice to the letter . . . dated February 7, 2008 which revoked all prior permissions for the sewer line, which constitutes [his] demand for the sewer line to be removed. It is [his] legal position that the City has been trespassing since that date." The trial court subsequently determined that "[a]s of November 12, 2013, Boyle formally revoked permission to have the sewer line on his property."

On appeal, Boyle argues that the trial court's ruling that the 2008 letter did not constitute a revocation of the City's license "ignored black letter law on how a parol license is revoked," and, consequently, "deprived [him] of an additional . . . six years of damages." The City counters that the trial court correctly determined that Boyle was not entitled to damages for trespass for any time period prior to 2013, because Boyle had given the City permission to keep the line on the property "until the parties resolved the matter." (Quotation omitted.) The City also asserts that Boyle's 2008 letter did not revoke the City's license because, although the letter "demands that [the City] remove the Line, it does not state that it is revoking the permission Boyle previously granted" in 2004 to the City.

Parol licenses "may be in writing, or verbal; but there is no distinction between the two, if the writing has not the legal requisites to make it a deed or grant of real estate." Blaisdell v. Railroad, 51 N.H. 483, 485 (1871). "The revocation of a parol license may be in writing, or verbal, or by acts clearly giving the licensee notice of the licenser's intention." Batchelder v. Hubbard, 58 N.H. 269, 269 (1878); see Steinfield v. Monadnock Mills, 81 N.H. 152, 156 (1923) (the plaintiff's complaints and demands for reparation from flowage on her land from the defendant's dam was notice that the plaintiff denied the defendant any right in the premises, which was sufficient revocation of the license, if one existed); Hodsdon v. Kennett, 73 N.H. 225, 226 (1905) (the plaintiff exercised his right of revocation by expressly notifying the defendants not to cut the wood and timber on his property); Quimby v. Straw, 71 N.H. 160, 162 (1901) (the license from the defendants to the plaintiffs to use stairways and passageways in the defendants' building was revocable at the pleasure of the defendants and they revoked it by erecting a wall); Houston, 46 N.H. at 508 (the defendant "had the right to revoke his license in any way that should be effectual," including cutting off a pipe for the purpose of putting an end to the license).

We agree with Boyle that, as a matter of law, the 2008 letter expressly revoked all prior permissions and constituted a revocation of the City's license. Although the City argues that Boyle's letter was ineffectual as a revocation because it did not expressly use the word "revoke," there is no requirement that specific language be used, so long as the writing "clearly giv[es] the licensee notice of the licenser's intention." Batchelder, 58 N.H. at 269. To the extent the City asserts that Boyle's continued attempts to resolve the sewer line issue demonstrated that he did not revoke permission, as Boyle explains, he "was not resorting to self-help and destroying the sewer line as the matter was being negotiated or determined in the courts" and he should not be penalized "for reasonably allowing the sewer line to remain on his property pending attempts at resolution." Accordingly, we reverse the trial court's ruling that the effective date of the trespass began in 2013, rather than in 2008, and remand for further proceedings consistent with this decision.

### 2. Lost Profits

The City argues in its cross-appeal that it was error for the trial court to allow Boyle's claim for lost profits to go to the jury because there was insufficient evidence to establish that Boyle's "hypothetical future dealership" was "reasonably certain to exist." (Bolding and capitalization omitted.) Boyle counters that there was "extensive evidence showing Mr. Boyle had reasonably certain grounds to develop another operational dealership but for the trespass and nuisance," including that "[t]here was hundreds of thousands of dollars of engineering work," "State permits were in process," and Boyle testified "how he always got the appropriate permits from the City."

We review sufficiency of the evidence claims as a matter of law, and uphold the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law. Tosta v. Bullis, 156 N.H. 763, 767 (2008). When performing this review we accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony. Id.

Prior to trial, the City moved in limine to exclude evidence and claims of alleged lost profits damages. The City argued, among other things, that Boyle's claim for lost profits was too speculative because he "has not . . . obtained municipal approval to build a dealership on the property," has not obtained approval from the State, and does not have any franchise/dealership agreements in place. Therefore, the City asserted, "there is no evidence upon which a reasonable jury could calculate lost profits."

Following a hearing, the trial court determined that "evidence as to the amount of lost profit damages is only relevant if Boyle successfully establishes that any amount of claimed profit from a desired second dealership was 'reasonably certain to result' but for the City's alleged conduct" and that there "are significant factual questions which directly impact the admissibility of this evidence." The court identified those questions as including, for example, "whether Boyle could have gotten a franchise, whether he could have obtained the necessary permits, [and] the timetable for securing said permits." The court, therefore, deferred ruling on the admissibility of expert testimony on lost profits "pending the admissibility of prima facie evidence at trial that Boyle is entitled to recover lost profits, generally."

At trial, Boyle testified about his plans to further develop the property. His testimony included the following representations: (1) Boyle submitted development plans to the Portsmouth planning board in 2009, but shortly thereafter requested that the board postpone site plan review to a time indefinite; (2) neither the zoning board of appeals nor the planning department have issued a decision regarding potential permits or variances; (3) Boyle's requests for an alteration of terrain permit and wetlands permit from the Department of Environmental Services for developing in the wetlands are still pending; (4) Boyle does not have a dealer franchise for a second dealership because he cannot apply for one until he has permits to build; (5) Boyle has not secured financing to fund the construction of a second building; (6) Boyle has not conducted a feasibility study to determine whether he could locate additional car dealerships on the property; and (6) Boyle never sought a zoning opinion because he "didn't see any problem with it" and he "figured he could get all of [the permits]."

Over the City's objection, the trial court allowed Boyle's expert witness on urban planning to testify, reasoning that the witness could "educate the jury"

8

about the process of going before a local planning board or zoning board of adjustment and

> the jury can then make a conclusion whether it thinks it's likely that this project would have made it through that process or not. I mean that's the issue. Is it more probable than not that a second dealership would have succeeded in this process? So, I don't see how else you get to the issue of lost profits without that evidence.

Boyle's urban planning expert testified about the general process by which an applicant develops a plan and gets it approved by the regulatory authorities. The witness offered his opinion that "the second dealership connected to the existing dealership is consistent" with the applicable regulations in Portsmouth, but testified that Boyle "may need variances from sideline setback," "may need a variance from the outdoor storage provisions" of the zoning ordinance, and "may need a variance from an impervious surface coverage." In addition, the witness testified that the Department of Environmental Services may play a role in Boyle's effort to obtain approval for a second dealership because, in his opinion, "a conditional use permit is probably required." The witness acknowledged that he has never appeared before the Portsmouth zoning board of adjustment, planning board, or conservation commission, and that he never spoke with the Portsmouth city planner about the development project.

The witness declined to offer any opinion as to whether it is more likely than not that Boyle's development would be approved, stating that he was "certainly not [there] to provide a probability estimate" but was there "to provide [his] opinion as to the reasonableness of Mr. Boyle's proposal." In the following exchange with the City's attorney, the witness testified:

> Q . . . And you're not telling this jury, are you, that it is your opinion that Mr. Boyle will be issued either a planning or a zoning permit by the adjudicatory bodies, that is, the ZBA and the planning board, regarding these variances and conditional uses, are you?
>
> A My testimony is that Mr. Boyle, based on the plan and the zoning ordinance has applied for a reasonable project, and it's reasonable to assume he will get those approvals, yes.
>
> . . . .
>
> Q . . . Are you basing your opinion that you've provided on probabilities or not?
>
> A I am not.

Q  You're not giving an opinion whether, based on probability, that the city will grant permits for Mr. Boyle, if you had an opinion based on probabilities, are you?

A  No.  Based on reasonableness.

Prior to testimony from Boyle's expert on the amount of lost profits, the City renewed its objection to the admission of evidence of lost profits damages, arguing that Boyle had failed to establish a prima facie case that he could secure a dealership and secure permits.  The City argued that there was "no affirmative evidence" that Boyle would have secured a dealership franchise from a manufacturer and "[t]here's been no showing, no direct or circumstantial evidence" that Boyle "would have received or not received permits from the city for the second dealership but for these wetlands."  The trial court disagreed, ruling that based on the evidence "a jury could conclude that but for the existence of the sewer line and/or trespassing water on the property," Boyle's plans "would have come to fruition" and he would have secured a second dealership "that was up and running."  Accordingly, the court allowed Boyle's expert on lost profits to testify.

The City moved for a partial directed verdict at the close of Boyle's case arguing that Boyle had failed to establish a prima facie case that the wetlands on the property are the "but for" cause of his inability to get a dealership because there were conditions irrespective of the wetlands that had to be satisfied in order for him to get a second dealership.  For example, the City argued that Boyle's expert testified that "in fact there is a variance for a setback requirement for any business from a residential district that has to be met . . . regardless of whether the wetlands are on the property" and, therefore, Boyle had not set forth a prima facie case.  The trial court denied the motion, stating that because the expert "opined that Mr. Boyle would be able to get the variances," the jury could conclude that "'but for' the sewer line, this process would have gone forward and he would have cleared those hurdles."

To establish a claim for lost profits, the plaintiff must prove both the fact of lost profits and the amount with reasonable certainty.  See Fitz v. Coutinho, 136 N.H. 721, 726 (1993).  While "absolute certainty" is not required, Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 296 (1992), damages cannot be awarded for "speculative losses."  Miami Subs Corp. v. Murray Family Trust and Kenneth Dash Partnership, 142 N.H. 501, 517 (1997) (quotation omitted).  In a tort cause of action,

> [o]ne to whom another has tortiously caused harm is entitled to compensatory damages for the harm if, but only if, he establishes by proof the extent of the harm and the amount of money

10

representing adequate compensation with as much certainty as the nature of the tort and the circumstances permit.

Clipper Affiliates v. Checovich, 138 N.H. 271, 274 (1994) (quotation and emphasis omitted).

Thus, to establish the fact of lost profits, Boyle was initially required to prove that it was reasonably certain he would obtain the necessary permits to develop a second dealership on the property. See Fitz, 136 N.H. at 726. In reviewing the sufficiency of the evidence on this issue, we consider cases in the analogous context of condemnation proceedings where the property's asserted highest and best use depends upon the approval of variances or permits for its development. In condemnation proceedings, "just compensation cannot be predicated upon potential uses which are speculative and conjectural." United States v. 320.0 Acres of Land, More or Less, Etc., 605 F.2d 762, 814 (5th Cir. 1979). Rather, evidence of the specific highest and best use of condemned land is only relevant if the use is likely to be "reasonably probable" in the reasonably near future. United States v. 33.92356 Acres of Land, 585 F.3d 1, 7 (1st Cir. 2009).

For example, in United States v. 33.92356 Acres of Land, the property at issue was zoned for conservation and passive recreation purposes and no other uses were allowed without a variance or permit. Id. at 3-4. Prior to trial, the district court granted the government's motion in limine to exclude the landowner's expert's testimony that the highest and best use of the property was for the construction of residences and sand extraction, because the expert's "opinion, by itself, fails to establish a reasonable probability that the Planning Board would either change the zoning or grant a variance at any time in the near future." Id. at 4-5. The First Circuit affirmed the district court's exclusion of the landowner's highest and best use evidence. Id. at 8-9. The court noted that the landowner had not spoken to anyone at the zoning board and had not made any showing that the board "would approve a rezoning, variance, or permits for residential development or sand extraction on this land." Id. at 8. Likewise, in Tennessee Valley Authority v. 1.72 Acres of Land, 821 F.3d 742 (6th Cir. 2016), the landowner testified that in his opinion, the highest and best use of his property was for a hotel, despite acknowledging that a hotel was not a permitted or conditional use under the zoning regulations and that he had not actually sought a rezoning. Id. at 746-47. Affirming the district court's determination that the landowner "did not show any reasonable probability that the property could be rezoned for commercial use," the Sixth Circuit noted that the landowner "did not present any evidence whatsoever suggesting that the [local regulatory authority] would approve a rezoning, variance, or permits for commercial development on the property." Id. at 754.

Similarly, in the case before us, we agree with the City that Boyle failed to present sufficient evidence to prove the fact of lost profits with reasonable certainty.  As set forth above, despite acknowledging that Boyle may need variances unrelated to the underlying trespass and nuisance to further develop his property, his expert offered <u>no</u> assessment of whether it was "reasonably certain" Boyle would obtain the necessary regulatory approvals required to add a second dealership.  Although the trial court determined that the expert needed only to establish whether it was "more probable than not" that Boyle's second dealership would be approved by the regulatory authorities, even if we assume that "more probable than not" satisfies the "reasonable certainty" standard, the expert expressly testified that he was <u>not</u> giving an opinion based on probability that the City would grant the necessary permits.  See <u>320.0 Acres of Land</u>, 605 F.2d at 819 n.130 (explaining that, where a use is subject to local zoning restrictions or to the regulatory authority of other local or state agencies, a party cannot make out a jury question "simply [by] asserting that a particular use is reasonably probable, or that there is a reasonable probability of obtaining a permit; as with all opinion evidence, there must be some foundation in fact").[1]

Furthermore, Boyle's own testimony highlighted additional requirements — unrelated to the trespass or nuisance — that needed to be met to develop a second dealership on the property, including obtaining a dealer franchise and securing financing to build a second building.  The speculative nature of satisfying these additional criteria further undermines the reasonable certainty of the fact of lost profits.  See <u>Great Lakes</u>, 135 N.H. at 297 (holding that there was insufficient evidence that lost profits arose from the defendant's breach of contract where the realization of the plaintiff's new business still depended upon successfully allying potential investors and obtaining sufficient capital from a bond not within the plaintiff's direct control).

Based upon our review of the record, we conclude that the trial court erroneously ruled that Boyle sustained his burden of proving that lost profits were reasonably certain to exist.  Accordingly, we vacate the award of lost profits damages and remand for further proceedings consistent with this decision.  Given our conclusion, we need not address the City's argument that the court erred in refusing to set aside or remit the jury's award.

---

[1] Although not relevant to our analysis of the trial court's ruling on the City's motion for a partial directed verdict at the conclusion of Boyle's case, we note that, in its case, the City presented evidence through the Portsmouth city planner that Boyle's development project would require three or four variances from the Portsmouth planning board.  This evidence would support the City's claim that the trial court erred in denying its motion to set aside the jury award, but we need not reach this issue in light of our conclusion that Boyle failed to establish a <u>prima facie</u> case necessary to seek lost profits damages.

12

### 3. Damages After 2016

Boyle argues that the trial court erred in granting the City's motion to preclude damages after December 2016. Shortly before the jury trial, the City exercised its power to take the property at issue by eminent domain. See RSA 498-A:5 (2010). Boyle opposed the taking by filing a preliminary objection, see RSA 498-A:9-a (2010), and moved to postpone the jury trial in this case or, alternatively, "combine the trial with the evidentiary hearing on the preliminary objection in the eminent domain case." Boyle asserted that "[u]ntil such time as the preliminary objection is determined and all appeals exhausted, it is impossible as a matter of law to know the key date to instruct the jury on damages due to the uncertainty of the effectiveness of the City's attempts to take the property" and, thus, "trial will severely prejudice [him] if it occurs prior to such determination."

The City moved to preclude at trial evidence of damages after the date of the taking. Over Boyle's objection, the trial court granted the motion, reasoning that the City's trespass ended when the City exercised its eminent domain power. The trial court denied Boyle's motion to postpone the jury trial, reasoning that if Boyle "is successful on his challenges to the eminent domain[,] that would only result . . . in an issue impact on the damages in this case." Although it noted that the damages issue was "significant," the court nonetheless determined that "it's discreet in the overall scheme of things" and that "the value of proceeding given the history of this case far outweighs the costs of further delay." Accordingly, the trial court precluded evidence of damages after December 2016.

After filing this appeal, Boyle prevailed on his preliminary objection to the eminent domain taking following a bench trial in superior court, in which the court found that the City failed to allege a proper statutory authority to support the taking. The City appealed that order and today, in a separate opinion, we affirm the trial court's ruling on the eminent domain matter. See City of Portsmouth v. 150 Greenleaf Avenue Realty Trust, ___ N.H. ___ (decided January 24, 2020).

Boyle asserts that the preclusion of damages after 2016 in the sewer line litigation was premised on the trial court's incorrect assumption that the City's taking was valid. In light of our affirmance of the ruling that the City's taking was illegal, we remand the issue of damages after December 2016 for the trial court to address in the first instance.

> Affirmed in part; vacated in part; reversed in part; and remanded.

HICKS and BASSETT, JJ., concurred; ABRAMSON and BROWN, JJ., retired superior court justices, specially assigned under RSA 490:3, concurred.